CLOSED

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CRIMINAL DOCKET FOR CASE #: <u>1:22−mj−01106−PK</u> All Defendants

Case title: USA v. Chen et al

Date Filed: 10/13/2022

Date Terminated: 10/13/2022

---

Assigned to: Magistrate Judge
Peggy Kuo


**Defendant (1)**

| | |
|---|---|
| **Yanbing Chen**<br>*TERMINATED: 10/13/2022* | represented by **Kannan Sundaram**<br>Federal Defenders<br>One Pierrepont Plaza, 16th Floor<br>Brooklyn, NY 11201<br>718−330−1203<br>Fax: 718−855−0760<br>Email: <u>kannan_sundaram@fd.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community Defender Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:1956−3300.F | |

---

Assigned to: Magistrate Judge
Peggy Kuo

**Defendant (2)**

| | | |
|---|---|---|
| **Rongjian Li**<br>*TERMINATED: 10/13/2022* | represented by | **Jeffrey G. Pittell**<br>Maher & Pittell LLP<br>42−40 Bell Blvd.<br>Suite 302<br>Bayside, NY 11361<br>516−829−2299<br>Fax: 516−977−3003<br>Email: jp@jpittell.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:1956−3300.F | |

---

Assigned to: Magistrate Judge
Peggy Kuo

**Defendant (3)**

| | | |
|---|---|---|
| **Jin Hua Zhang**<br>*TERMINATED: 10/13/2022* | represented by | **Kevin E. Morgan**<br>Demidchik Law Firm PLLC<br>136−18 39th Avenue<br>Flr. 8<br>Flushing, NY 11354<br>929−292−8266<br>Email: Kevinmorgan@dcklawfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

| **Pending Counts** | | | **Disposition** | |
|---|---|---|---|---|

None

**Highest Offense Level
(Opening)**                                          **Disposition**

None

| **Terminated Counts** | | | **Disposition** | |
|---|---|---|---|---|

None

**Highest Offense Level
(Terminated)**

None

| **Complaints** | | | **Disposition** | |
|---|---|---|---|---|

18:1956−3300.F

---

**Plaintiff**

**USA**                             represented by    **Andrew David Reich**
United States Attorney's Office, EDNY
271−A Cadman Plaza East
Brooklyn, NY 11201
718−254−6452
Email: andrew.reich@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Select<br>all / clear | Docket<br>Text |
|---|---|---|---|
| 10/13/2022 | 1 | RULE 5 AFFIDAVIT/REMOVAL TO THE DISTRICT OF MASSACHUSETTS by USA as to Yanbing Chen, Rongjian Li, Jin Hua Zhang (Attachments: # 1 Exhibit A) (FC) (Entered: 10/14/2022) | |
| | | *Main Document* | |
| | | Attachment # 1 *Exhibit A* | |
| 10/13/2022 | | Arrest (Rule 5) of Yanbing Chen, Rongjian Li, Jin Hua Zhang (FC) (Entered: 10/14/2022) | |
| 10/13/2022 | | Minute Entry for proceedings held before Magistrate Judge Peggy Kuo:Arraignment as to Yanbing Chen (1) Count Complaint held on 10/13/2022, Attorney Appointment Hearing as to Yanbing Chen held on 10/13/2022, Initial Appearance in Rule 5(c)(3) Proceedings as to Yanbing | |

| | | |
|---|---|---|
| | | Chen held on 10/13/2022. AUSA Andrew Reich present. Dft present w/federal defender Kannan Sundaram. Mandarin interpreter Lisa Lu present. Removal proceeding to the District of Massachusetts hearing held. Dft waived identity hearing. Dfse counsel presented a bail application with 2 sureties; govt opposed, court granted the application and set bond @ $120,000. 2 sureties appeared via teleconference, sworn and advised of the bond obligations and gave consent to the court to sign the bond on their behalf. Dft advised of the bond conditions and signed the bond. Dft released on $120,000 bond. Rule 5f warnings given to the govt. (FTR Log # 10/13/22 7:21−8:25; 8:56−9:31.) (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 2 | ORDER Setting Conditions of Release as to Yanbing Chen (1) $120,000. Ordered by Magistrate Judge Peggy Kuo on 10/13/2022. (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 3 | CJA 23 Financial Affidavit by Yanbing Chen (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 4 | WAIVER of Rule 5(c)(3) Hearing by Yanbing Chen (FC) (Entered: 10/18/2022) |
| 10/13/2022 | | Minute Entry for proceedings held before Magistrate Judge Peggy Kuo:Arraignment as to Rongjian Li (2) Count Complaint held on 10/13/2022, Attorney Appointment Hearing as to Rongjian Li held on 10/13/2022, Initial Appearance in Rule 5(c)(3) Proceedings as to Rongjian Li held on 10/13/2022. AUSA Andrew Reich present. Dft present w/cja counsel Jeffrey Pittell. Mandarin interpreter Way Moi present. Removal proceeding to the District of Massachusetts hearing held. Dft waived identity hearing. Dfse counsel & govt agree on a $100,000 bond package with 2 sureties. 2 sureties appeared via teleconference, sworn and advised of the bond obligations and gave consent to the court to sign the bond on their behalf. Dft advised of the bond conditions and signed the bond. Dft released on a $100,000 bond. Rule 5f warnings given to the govt. (FTR Log # 10/13/22 8:31−8:54.) (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 5 | ORDER Setting Conditions of Release as to Rongjian Li (2) $100,000. Ordered by Magistrate Judge Peggy Kuo on 10/13/2022. (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 6 | CJA 23 Financial Affidavit by Rongjian Li (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 7 | CJA 20 as to Rongjian Li: Appointment of Attorney Jeffrey G. Pittell for Rongjian Li. Ordered by Magistrate Judge Peggy Kuo on 10/13/2022. (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 8 | WAIVER of Rule 5(c)(3) Hearing by Rongjian Li (FC) (Entered: 10/18/2022) |
| 10/13/2022 | | Minute Entry for proceedings held before Magistrate Judge Peggy Kuo:Arraignment as to Jin Hua Zhang (3) Count Complaint held on 10/13/2022, Initial Appearance in Rule 5(c)(3) Proceedings as to Jin Hua Zhang held on 10/13/2022. AUSA Andrew Reich present. Dft present w/ret counsel Kevin Morgan. Mandarin interpreter Lisa Lu present. Removal proceeding to the District of Massachusetts hearing held. Dft waived identity hearing. Dfse counsel presented a bail application with 2 sureties & 2 properties; govt opposed; court denied the application after examining the surety under oath. Commitment to another district order entered. Rule 5f |

| | | |
|---|---|---|
| | | warnings given to the govt. (FTR Log # 10/13/22 7:21−8:25; 8:56−9:31.) (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 9 | COMMITMENT TO ANOTHER DISTRICT as to Jin Hua Zhang. Defendant committed to District of Massachusetts. Ordered by Magistrate Judge Peggy Kuo on 10/13/2022. (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 10 | NOTICE OF ATTORNEY APPEARANCE: Kevin E. Morgan appearing for Jin Hua Zhang (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 11 | WAIVER of Rule 5(c)(3) Hearing by Jin Hua Zhang (FC) (Entered: 10/18/2022) |
| 10/13/2022 | 12 | ORDER: This order is entered pursuant to Federal Rule of Criminal Procedure 5(f) to confirm the prosecution's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations as to Yanbing Chen, Rongjian Li, Jin Hua Zhang. Ordered by Magistrate Judge Peggy Kuo on 10/13/2022. (FC) (Entered: 10/18/2022) |

AB:ADR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

           - against -

YANBING CHEN,
RONGJIAN LI and
JIN HUA ZHANG,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

AFFIDAVIT IN SUPPORT
OF REMOVAL TO THE
DISTRICT OF
MASSACHUSETTS

(Fed. R. Crim. P. 5)

Case No. 22-MJ-1106

EASTERN DISTRICT OF NEW YORK, SS:

        Robiel Ande, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

        On or about October 7, 2022 and October 12, 2022, the United States District Court for the District of Massachusetts issued arrest warrants commanding the arrests of YANBING CHEN, RONGJIAN LI and JIN HUA ZHANG on criminal complaints charging violations of Title 18, United States Code, Section 1956(h) (conspiracy to commit money laundering) and Title 21, United States Code, Section 846 (conspiracy to distribute and possess with intent to distribute cocaine).

        The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1.    On or about October 7, 2022, the United States District Court for the District of Massachusetts issued an Arrest Warrant commanding the arrest of JIN HUA ZHANG in connection with a Criminal Complaint charging him with violations of Title 18, United States Code, Section 1956(h) (conspiracy to commit money laundering) and Title 21, United States Code, Section 846 (conspiracy to distribute and possess with intent to distribute cocaine). A true and correct copy of the Criminal Complaint and Arrest Warrant is attached as Exhibit A.

2.    On or about October 12, 2022, the United States District Court for the District of Massachusetts issued Arrest Warrants commanding the arrests of YANBING CHEN and RONGJIAN LI in connection with a Criminal Complaint charging YANBING CHEN with violations of Title 21, United States Code, Section 846 (conspiracy to distribute and possess with intent to distribute cocaine) and RONGJIAN LI with violations of Title 18, United States Code, Section 1956(h) (conspiracy to commit money laundering). A true and correct copy of the Criminal Complaint and Arrest Warrants is attached as Exhibit B.

3.    On or about October 13, 2022, an indictment was returned in the District of Massachusetts charging YANBING CHEN, RONGJIAN LI and JIN HUA ZHANG for the above offenses. A true and correct copy of the Indictment is attached as Exhibit C.

4.    The defendant YANBING CHEN was arrested by FBI agents at approximately 6:03 a.m. on October 13, 2022 at his known residence, 688 85th Street in Brooklyn, New York. Agents recognized the defendant from a photograph of YANBING CHEN that they reviewed prior to the arrest, pursuant to the investigation. The defendant stated that his name was "Yanbing Chen" and that he lived at the residence. The defendant provided a New York State driver's license which bore the name "Yanbing Chen." The date of birth listed on the license was the same as YANBING CHEN's date of birth.

2

5.     The defendant RONGJIAN LI was arrested by FBI agents at approximately 6:06 a.m. on October 13, 2022 at his known residence, 74 Bell Street in Staten Island, New York. Agents recognized the defendant from a photograph of RONGJIAN LI that they reviewed prior to the arrest, pursuant to the investigation. The defendant stated that his name was "Rongjian Li" and that he lived at the residence. The defendant provided a United States passport which bore the name "Rong Jian Li." The date of birth listed on the passport was the same as RONGJIAN LI's date of birth.

6.     The defendant JIN HUA ZHANG was arrested by FBI agents at approximately 6:05 a.m. on October 13, 2022 at his known residence, 479 Darlington Avenue in Staten Island, New York. Agents recognized the defendant from a photograph of JIN HUA ZHANG that they reviewed prior to the arrest, pursuant to the investigation. The defendant stated that his name was "Jin Hua Zhang" and that he lived at the residence. The defendant provided a New York State driver's license which bore the name "Jin Hua Zhang." The date of birth listed on the license was the same as JIN HUA ZHANG's date of birth.

7.     Based on the foregoing, I submit that there is probable cause to believe that the defendants are the YANBING CHEN, RONGJIAN LI and JIN HUA ZHANG wanted in the District of Massachusetts.

3

WHEREFORE, your deponent respectfully requests that the defendants

YANBING CHEN, RONGJIAN LI and JIN HUA ZHANG be removed to the District of

Massachusetts so that they may be dealt with according to law.

_____

Robiel Ande
Special Agent
Federal Bureau of Investigation

Sworn to before me this
13th day of October, 2022

_____

GY KUO
STRATE JUDGE
NEW YORK

4

# EXHIBIT A

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| (1) Jin Hua ZHANG, (2) Feng CHEN, (3) Licheng HUANG, (4) Roger LUO, (5) Thong NGUYEN, (6) Augustin VILLA, and (7) Mariano SANTANA | ) Case No.  22-6321-MPK |
| | ) |
| | ) |
| | ) |
| _____ | |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 2021 to present_____ in the county of ___Suffolk and elsewhere___ in the

_____ District of ___Massachusetts___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering |
| 21 U.S.C. § 846 | Conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Benjamin Wallace

☑ Continued on the attached sheet.

/s/ Benjamin Wallace
*Complainant's signature*

Benjamin Wallace, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/07/2022___

*Judge's signature*

City and state: ___Boston, Massachusetts___          Hon. M. Page Kelley, U.S. Chief Magistrate Judge
*Printed name and title*

AFFIDAVIT

I, Benjamin Wallace, Special Agent, Federal Bureau of Investigation ("FBI"), being sworn, state as follows:

1.      I am a Special Agent with the FBI's Boston Field Office. I have worked for the FBI since 2009. Before joining the FBI, I was a Special Agent with the United States Secret Service ("USSS") for approximately four years. Before that, I worked as a police officer with the City of Atlanta, Georgia Police Department for approximately five years.

2.      I am presently assigned to FBI Boston's Organized Crime Task Force (the "FBI Task Force"). The mission of the FBI Task Force is to identify, investigate, disrupt and dismantle sophisticated criminal organizations operating in Massachusetts, with a particular focus on those groups connected to national or transnational criminal networks that pose the greatest threat to the national and economic security of the United States. The FBI Task Force utilizes a broad array of techniques to conduct these investigations, including utilizing information received from confidential human sources; examining and exploiting telephone, social media, and financial records; and embedding undercover agents in dangerous groups that are difficult to infiltrate.

3.      I submit this affidavit in support of an application for a criminal complaint charging that, from in or about May 2021 to the present, (1) Jin Hua ZHANG, (2) Licheng HUANG, (3) Feng CHEN, (4) Roger LUO, (5) Thong NGUYEN, (6) Augustin VILLA, and (7) Mariano SANTANA (the "Targets") conspired to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). I further allege that during that same time period, ZHANG conspired to distribute and to possess with intent to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

4.      During this investigation, the FBI Task Force used cooperating witnesses ("CWs") and undercover agents ("UCs") to infiltrate a criminal organization which was led by ZHANG and launders large sums of money for various criminal groups. Agents on the FBI Task Force first detected the network in greater Boston but also identified leaders and members of the group throughout the United States and overseas. Over the past year, agents determined that ZHANG and his crew (the "ZHANG Organization") laundered at least $25 million worth of drug proceeds and profits from other illegal businesses. To date, agents have traced funds from the ZHANG Organization to Hong Kong and elsewhere in China, India, Cambodia, and Brazil, among other locations. The investigation also revealed that the ZHANG Organization distributed kilogram-sized quantities of cocaine, a Schedule II controlled substance, and MDMA, or ecstasy, a Schedule I controlled substance, to FBI CWs and UCs.

5.      This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts necessary to establish probable cause to believe that the Targets committed the violation(s) set forth in the accompanying criminal complaint.

6.      The Money Laundering Conspiracy. In May 2021, a Boston-area member of the ZHANG Organization, HUANG, began to have a series of discussions with a cooperating witness (CW-1).[1] In these exchanges, which agents recorded or preserved, HUANG asked CW-1 on behalf of his "boss" (later identified as ZHANG) if CW-1 knew anyone who could launder the proceeds

_____

[1] CW-1 began providing information to agents when it was unable to pay debts it incurred to an extortionate lender. In exchange for information, agents paid CW-1, who used the funds to help resolve its debt. Since then, CW-1 has been paid for its work in this and other investigations. CW-1 has been advised that agents will take steps to ensure CW-1's safety and the safety of CW-1's family. CW-1's information has been corroborated by agents and by the investigation generally. For that reason, I believe CW-1 is reliable.

2

of drug sales by converting United States currency into Chinese renminbi (RMB) and then having those funds deposited in Chinese bank accounts.[2]

7.    Based on this information, the FBI Task Force designed an undercover operation to identify the network of money launderers working with HUANG's group (which ultimately led to ZHANG) and to identify the sources of the illicit funds that the group sought to launder. Agents directed CW-1 to make HUANG a counterproposal: CW-1 would agree to introduce HUANG to other criminals (in reality, FBI undercover agents) who could help HUANG and his group convert drug funds into cryptocurrency. Based on my training and experience, I know that cryptocurrency is a decentralized, peer-to peer, computer network-based medium of exchange that may be used as a substitute for government-issued currency. Cryptocurrencies have legitimate uses but are also used for criminal purposes such as money laundering and are often used as a means of payment for illegal goods and services. Cryptocurrency is stored in a virtual account called a wallet. Those who use cryptocurrency for illicit purposes often maintain multiple wallets in an effort to thwart law enforcement's ability to track purchases or transfers.

8.    Over a series of phone calls and meetings in June and July 2021, CW-1 introduced HUANG to two undercover agents, UC-1 and UC-2 (collectively, the UCs). UC-1 spoke Mandarin and posed as a West Coast-based criminal. UC-2 posed as UC-1's partner and a money launderer based in Boston. UC-1 explained to HUANG that he used UC-2 to launder money, including drug proceeds, by converting the funds to cryptocurrency, which could then be more easily transmitted to China or elsewhere without being detected by law enforcement. UC-1 and UC-2 explained to

---

[2] CW-1 communicated with HUANG on a cellular telephone registered to HUANG at his home address. CW-1 identified HUANG from a Registry of Motor Vehicles (RMV) photograph.

3

HUANG that UC-2 charged a fee for this service, and that the fee varied based on the level of danger involved. For instance, the fee charged for laundering funds derived from low-risk internet-based scams was smaller than the fee charged for funds derived from drug trafficking.

9.     On July 28, 2021, agents recorded a meeting between CW-1, the UCs, and HUANG in Newport, Rhode Island. During this meeting, HUANG explained to the UCs that his "boss" needed to launder large amounts of proceeds from marijuana trafficking. The UCs, in turn, explained to HUANG how the group's drug proceeds would be converted into cryptocurrency. Once HUANG contacted CW-1 to report he would have cash to convert, HUANG and CW-1 would agree to meet at a predetermined location (often a public area, like the parking lot of a bank or grocery store or coffee shop). Once there, a courier would bring a bag containing a bulk cash delivery. CW-1 would confirm that the correct amount of money had been delivered. CW-1 would then contact UC-2 by phone. After UC-2 received confirmation that the funds to be laundered had arrived, UC-2 would transfer an equivalent amount of cryptocurrency, minus a fee for the service, to a digital wallet provided to UC-2. The UCs explained that the person in control of the digital wallet (later determined to be ZHANG) would be able to confirm the transfer within seconds.

10.     During the meeting, UC-2 made a small cryptocurrency transfer to a digital wallet that HUANG identified as belonging to his "boss." When HUANG called his "boss," UC-1 observed that the contact name on HUANG's telephone was "Hua." Agents reviewed telephone records from HUANG's cell phone and determined that HUANG had called 917-916-3567, which according to a law enforcement database was a telephone number associated with ZHANG.

11.     HUANG and CHEN Made Bulk Cash Deliveries In August 2021. After the mechanics of the money laundering operation were established, HUANG began to contact CW-1 to arrange meetings to drop off bags of cash to be converted to Tether, a type of cryptocurrency.

4

These meetings took place in the manner established at the July 28, 2021 meeting. HUANG contacted CW-1 to advise that he had a customer with cash to drop off. HUANG provided CW-1 with a location and an approximate time for the meeting and the amount of cash to be converted. Before the meeting, agents met with and searched CW-1, equipped CW-1 with an audio-video recording device, and surveilled CW-1 to the meeting location. At the meeting, HUANG's money laundering customer would arrive with cash which would be provided to HUANG and CW-1. UC-2 then transferred an equivalent amount of Tether to a digital wallet controlled by ZHANG. At the outset, fees were added to the bulk cash dropped off to CW-1. Beginning in January 2022, fees were deducted from the cash total. The fees charged fluctuated over time but generally ranged between 1.5 – 2% of the total amount of cash dropped off. When the meeting ended, agents followed CW-1 to a predetermined meeting location where CW-1 was again searched and turned in the recording equipment and the collected cash. Agents counted the bulk cash, placed the cash in a temporary vault, and eventually deposited the cash into an FBI account.

12.     On August 6, 2021, HUANG arranged to meet CW-1 at a TD Bank parking lot in Quincy to convert approximately $30,000 in cash to Tether. Before CW-1 arrived, agents observed a black Acura sedan registered to HUANG and his wife park in the lot. For 20 minutes, HUANG and CW-1 were in contact with their respective partners while continuing to speak to each other. At 7:21 p.m., a blue Porsche Macan arrived at the location (the plate came back to a rental / short-term leasing agency) and HUANG approached the passenger side window of the Porsche. CW-1 walked over to Porsche a short time later. The Porsche pulled in behind the Acura and while CW-1 was present, agents observed HUANG use the speaker function of his cell phone to talk to a voice agents identified as ZHANG's. At 7:43 p.m., agents observed a white bag pass from inside the Porsche through the passenger side window to CW-1. Both HUANG and CW-1 left the bank

parking lot. Agents followed CW-1 to a predetermined meeting location and turned in a bag containing $30,550.

13.     After the meeting, CW-1 advised agents that he observed HUANG dial the phone number for the courier who delivered the cash in the white bag and provided agents with the number, 617-953-1920. When agents ran the number through a law enforcement database, the number was associated with CHEN. On August 7, 2021, agents showed CW-1 an RMV photo of CHEN and CW-1 positively identified CHEN's photo as the driver and occupant of the Porsche.

14.     On August 19, 2021, HUANG, ZHANG, and CHEN again worked to launder $30,500 in cash. For this deal, agents introduced a second cooperating witness, CW-2.[3] Also, because HUANG wanted to meet UC-2 in person, UC-2 was present at the meeting and provided cryptocurrency, minus the fee, in exchange for cash in the presence of HUANG and CHEN while in contact by phone with ZHANG.

15.     The meeting occurred as follows: HUANG arranged to meet CW-1 at an address in Quincy and after the meeting started, agents observed CHEN driving a black Ford F150 truck registered to him park at the meeting location. CW-1, CW-2 and HUANG approached CHEN's Ford F150 truck. Shortly thereafter, UC-2 arrived and parked his vehicle nearby. CHEN brought a pink and blue bag containing $30,500 in cash. CHEN handed the bag to HUANG who in turn

---

[3] Agents approached CW-2 after they identified CW-2 as a participant in criminal activity at a Boston-area business. After agents confronted CW-2 with its conduct, CW-2 agreed to provide information to law enforcement. CW-2 initially cooperated in the hopes that if CW-2 provided truthful information, CW-2 would not be charged in connection with CW-2's criminal conduct. CW-2 sold its interest in the business at the direction of agents. Thereafter, CW-2 was paid for its work in this and other investigations. CW-2 has been advised that agents will take steps to ensure CW-2's safety and the safety of CW-2's family. CW-2's information has been corroborated by agents and by the investigation generally. For that reason, I believe CW-2 is reliable.

handed the bag to UC-2. While HUANG and CHEN were present, UC-2 converted the cash to Tether and sent the digital currency to ZHANG's digital wallet, minus the laundering fee. ZHANG confirmed to UC-2 by phone that he had received the digital currency transfer. UC-2 gave CW-1 the bag containing the cash and UC-2 and CW-2 left together. Agents followed CW-1 and the cash back to a predetermined meeting location where CW-1 gave agents the bag of money.

16. Agents Direct the CWs to Contact ZHANG. On November 16, 2021, agents directed CW-1 and CW-2 to place a recorded telephone call to ZHANG. CW-1 and CW-2 introduced themselves as friends of HUANG who had done "U" (an abbreviation for USDT, or "Tether") transactions in Boston with HUANG. CW-1 reminded ZHANG that he had spoken to him before with HUANG. CW-1 introduced CW-2 as an assistant to UC-1, the West Coast-based criminal. During the call, ZHANG explained that HUANG does not have a high degree of tolerance for larger cash transactions and that HUANG cannot carry the burden if something goes wrong or the money is taken by law enforcement. ZHANG stated that if the first transaction can be done face-to-face in New York, ZHANG can do at least "20" (meaning $200,000). CW-1 said that their bosses (UC-1 and UC-2) would also agree to send someone to New York for cash pickups. ZHANG told CW-1 and CW-2 that he could do $200,000 to $300,000 a day, maybe up to $500,000. ZHANG said he just found a new agent in Boston who is handling "5" ($50,000) to "10" ($100,000) units for ZHANG every day. (Agents identified this "agent" for ZHANG as ROGER LUO, who made several bulk cash drop offs in November 2021 and January 2022.)

17. After this call between CW-1, CW-2, and ZHANG, agents were able to use CW-1 and CW-2 to communicate directly with ZHANG. The money laundering operation worked exactly as described above – the ability to communicate with ZHANG directly obviated the need for the CWs to coordinate transactions through HUANG.

7

18.   <u>Bulk Cash Drop Offs With LUO</u>. Between November 2021 and January 2022, LUO, a Boston-area courier for ZHANG, delivered bulk cash to be converted to Tether to CW-1 and CW-2 on four occasions. On November 22, 2021, ZHANG and CW-1 communicated over a WeChat messaging application[4] where ZHANG arranged for CW-1 to collect $70,000 in cash to be converted to Tether, plus a 1.5 % fee. ZHANG told CW-1 to meet a male Chinese courier at a Starbucks on Adams Street in Milton. Using the procedures set out above, agents surveilled CW-1 to the Starbucks at 10:17 a.m. At 10:23 a.m., agents observed a Chinese male wearing a black hooded sweatshirt, black pants, and a black facemask enter the Starbucks. CW-1 then walked outside and sat at a table with the man, who was carrying a large brown paper bag. At 10:38 a.m., agents received a phone call from UC-2, who reported that CW-1 called him to confirm that CW-1 was in possession of the cash. UC-2 transferred $70,000 in Tether to ZHANG's digital wallet and CW-1 gave agents the brown bag containing $71,050 (including the 1.5 percent fee of $1,050).

19.   On November 30, 2021, CW-1 arranged with ZHANG to conduct another cash pick up in exchange for USDT totaling $203,000 (including the 1.5 percent fee of $3,000). CW-1 and ZHANG negotiated the cash pickup over Telegram, which ZHANG had requested they use. CW-1 and CW-2 met with LUO in Cambridge and collected the $203,000 and UC-2 sent $200,000 USDT to ZHANG's digital wallet.

20.   On January 12, 2022, ZHANG and UC-2 used Telegram to arrange for a $70,000 cash pick up plus a 1.5% fee. ZHANG told UC-2 to send CW-1 to a Whole Foods parking lot on Harrison Avenue in Boston. Using the procedures set out above, CW-1 arrived at 1:42 p.m. Agents

---

[4] Communications over WeChat lasted about one week before agents directed CW-1 to transition to Telegram, an end-to-end encrypted messaging application that CW-1 had on its phone and that ZHANG also used. Agents preserved these communications whenever possible.

8

observed LUO arrive at the Whole Foods carrying an orange bag. LUO got into CW-1's car. At 2:00 p.m., CW-1, who was still with LUO, called UC-2, to report that he had $71,050 in cash and to transmit $70,000 in Tether to ZHANG's digital wallet. Thereafter, CW-1 met with agents and turned in the orange bag containing $71,050 in cash.

21.     On January 14, 2022, agents conducted a nearly identical deal with LUO, this time for $101,500 in cash at the South Shore Place in Braintree. At 11:30 a.m., CW-1 arrived at the parking lot and parked near Lord & Taylor. At 11:32 a.m., agents saw LUO on his phone near the Cheesecake Factory restaurant. Agents saw LUO walk toward two cars, a white Toyota Highlander and a red Jeep Liberty. Agents observed a female in the Highlander. After LUO made it to the cars, LUO turned and walked back to the Cheesecake Factory with a large black shopping bag and the Highlander drove off. CW-1 drove to where LUO was standing and LUO got into CW-1's car. After a brief meeting, during which LUO provided CW-1 a black bag containing a cardboard box with $101,500, UC-2 transferred $100,000 in Tether to ZHANG's digital wallet.

22.     Other Boston-Area Couriers Laundered Cash Through ZHANG's Organization. Beginning in or around March 2022, ZHANG and his associates began to use a token system to verify the identity of the UC or CW who would pick up ZHANG's cash (and later drugs). First, the UC or CW would send a photo of a dollar bill to serve as the "token" for the transaction. ZHANG or one of his associates would send this photo to his money or drug courier. When the FBI UC or CW would arrive to accept the cash or drugs, he/she would give ZHANG's courier the actual dollar bill, verifying that he/she was the person who was supposed to retrieve the cash or drugs.

23.     NGUYEN Delivered $103,800 on March 16, 2022. One courier to use this verification system was NGUYEN. On March 15, 2022, ZHANG advised UC-2 to expect to

9

receive a bulk cash delivery from a customer of ZHANG's, eventually identified as Thong NGUYEN. ZHANG and UC-2 agreed on a 2% fee to convert the cash into Tether. During an exchange of text messages, CW-1 sent images of the dollar bill token to NGUYEN and NGUYEN and CW-1 agreed to meet the next day at the parking lot of a Chipotle restaurant in Saugus. On March 16, 2022, agents observed CW-1 enter a Toyota Tacoma truck registered to NGUYEN. During the recorded meeting between NGUYEN and CW-1, CW-1 showed NGUYEN the dollar bill that he had previously photographed and sent by text. NGUYEN told CW-1 that the funds being picked up were from marijuana sales and handed CW-1 a black bag containing $103,800. UC-2 then transferred Tether to ZHANG,[5] minus a 2% fee of $2,080. After the transaction was completed, CW-1 left with the cash to meet with agents and NGUYEN quickly entered and exited the restaurant. Agents photographed NGUYEN as he left the restaurant and identified him from the video recording and surveillance as the man who dropped off the cash to CW-1.

24.     <u>Agents Seize $109,850 and a Firearm From NGUYEN</u>. On April 11, 2022, ZHANG contacted CW-1 and told CW-1 that $100,000 needed to be collected from the same Vietnamese group that CW-1 had met with before. At 10:20 a.m., agents began surveillance at NGUYEN's home. Agents saw NGUYEN leave his home carrying one gray and one yellow bag. Agents eventually asked a Massachusetts State Police trooper in a marked cruiser to conduct a traffic stop of NGUYEN on Route 495 near Wrentham.

25.     NGUYEN provided the trooper with a valid Massachusetts driver's license in his name. NGUYEN informed the trooper and agents that he had a firearm under his seat in a lock

---

[5] In this instance, UC-2 made the Tether transfers to ZHANG in multiple installments.

10

box and that he had a license to carry the firearm (NGUYEN showed the license to the trooper). He also admitted that there was a bag of cash in the back of the truck. NGUYEN claimed that the cash was a down payment for a real estate venture collected from family members and that the cash had been in his truck for several days. When agents asked NGUYEN for his phone numbers, NGUYEN provided two numbers. When agents observed three cellular telephones on the passenger seat of the truck, NGUYEN claimed he did not know the number for the third phone and did not know how to determine what it was. When agents showed NGUYEN how to look up the phone number on the third device, agents confirmed it was the phone used to contact CW-1 for the March 16, 2022 bulk cash drop off. Agents seized a Glock 43x 9 millimeter semiautomatic pistol, two Glock magazines containing ammunition, and a gray bag containing $109,850 in U.S. currency from NGUYEN's truck. NGUYEN was provided with a receipt and allowed to leave.

26. Later that day, CW-1 received a text message from an as-yet unidentified dispatcher working for ZHANG's network. The dispatcher told CW-1 that the driver could not meet CW-1 today and that the meeting was cancelled.

27. <u>VILLA Delivered $75,860 on May 26, 2022</u>. On May 26, 2022, ZHANG advised UC-2 to expect to receive a bulk cash delivery from a customer of ZHANG's organization, eventually identified as Augustin VILLA. Over Telegram, a dispatcher working for ZHANG contacted CW-1 to meet the courier at a Home Depot in Cranston, Rhode Island. CW-1 sent a photograph of a dollar bill to ZHANG to be passed on to the courier and using the procedures set out above proceeded with agents to the meeting location. When CW-1 arrived, ZHANG's dispatcher told CW-1 by text that the courier was driving a black Chevrolet SUV. Ten minutes later, a black Chevrolet Equinox SUV registered to VILLA pulled into the parking lot. CW-1 entered VILLA's car. During the brief recorded meeting, CW-1 provided VILLA with the dollar

11

bill previously photographed and transmitted to ZHANG and VILLA handed CW-1 a bag containing $75,860 in cash. UC-2 sent an equivalent amount of Tether, minus a $1,520 fee, to ZHANG's digital wallet. CW-1 identified a driver's license photograph of VILLA as the courier he met with.

28.     SANTANA Delivered $60,000 Over Two Days In June 2022.  On June 1, 2022, a ZHANG dispatcher contacted CW-1 to arrange a bulk cash delivery on June 2 in the greater Boston area. Using Telegram, the dispatcher directed CW-1 to provide a photo of a dollar bill token and bring that dollar to the cash delivery to verify CW-1's identity at the meeting location, which was eventually determined to be a parking lot of a business in Quincy. Using the procedures set out above, agents and CW-1 proceeded to the parking lot.  Shortly after CW-1 arrived, a heavy-set Hispanic man, later identified as Mariano SANTANA, exited a rental car carrying a plastic bag. SANTANTA walked across the parking lot and got into CW-1's vehicle.

29.     During the recorded meeting inside CW-1's vehicle, SANTANA asked CW-1 for the token, which CW-1 provided. SANTANA told CW-1 that the bag he was delivering contained $30,000. After receiving the cash, CW-1 sent the dispatcher and ZHANG a Telegram message confirming that CW-1 had received the cash. Shortly thereafter, either the dispatcher or ZHANG remotely deleted the group Telegram messages arranging the delivery.

30.     CW-1 left the parking lot, met up with agents, and handed in the plastic bag SANTANA provide. Inside the bag, agents found a cardboard box containing $30,000 bundled with rubber bands. Agents obtained rental car company records for the vehicle SANTANA drove to deliver the cash. Those records indicate that SANTANA rented the car. After reviewing a Massachusetts driver's license photo of SANTANA, CW-1 confirmed that SANTANA was the person who delivered the cash.

12

31.     On or about June 7, 2022, CW-1 received another bulk cash delivery from SANTANA. This delivery was arranged the same way ZHANG and the dispatcher arranged the prior delivery, with Telegram messages and the use of a dollar bill token and CW-1 met SANTANA in the same Quincy parking lot to complete the deal. Shortly after CW-1 arrived, SANTANA exited the business carrying a black plastic bag containing $29,800 in cash. Following the delivery, either ZHANG or the dispatcher again deleted the Telegram messages arranging this bulk cash delivery. After the delivery, agents observed SANTANA drive away in the same vehicle he drove to the June 2 delivery.

32.     ZHANG Identified Other Sources of Funds To Be Laundered. On January 10, 2022, ZHANG and an associate went to the One Brooklyn Hotel in Brooklyn, New York, for a meeting with the FBI UCs and CW-1. During the recorded meeting, UC-1 explained his fictitious money laundering business. UC-1 described how his business was mostly from Latin America. UC-1 indicated that he usually charges 7% for "powder" money, which was a reference to money derived from cocaine trafficking. UC-1 further explained that to safely launder this money, he would send it through multiple layers, and even if law enforcement investigated, the funds would not appear to be the proceeds of criminal activity. As a result, UC-1 told ZHANG, both UC-1 and his money laundering customers were protected.

33.     In response, ZHANG explained that he and his associates also receive money from similar sources (i.e., drug proceeds), but he received all of this money in cash. ZHANG indicated that the money he received in New York were mostly from cocaine trafficking, which he referred to as "Latin American," or the proceeds of marijuana trafficking, which he called "leaf." ZHANG also clarified that money that appears to be from marijuana traffickers sometimes includes cocaine proceeds, which he referred to as "white."

34.     ZHANG asked the UCs if they have dealt with what he called "T5" money. In response, the UCs told ZHANG that the money they launder comes from all different sources. ZHANG explained what he meant by "T5" money. According to ZHANG, these funds come from victims of fraud schemes. These funds are transferred from business or personal accounts when a victim is convinced under false pretenses to transfer money to a fraudster's account. ZHANG provided the UCs with following example of a T5 scheme: a scammer uses social media, such as Instagram or Facebook, to lure a victim to "invest in" cryptocurrency. The victim is led to believe that he or she is making money, so the victim invests more. However, eventually, the scammer takes the victim's money. ZHANG indicated that if the loss amount is small, neither the police nor the bank would investigate. But if the loss is large enough, ZHANG said the FBI could get involved. Normally, by the time the victims realize that they are being scammed and report the fraud to the bank or police, the proceeds have been transferred out of the fraudsters' bank account that was receiving the victim's money. However, once the fraud is detected, the bank or law enforcement would know that the receiving account was involved with an online fraud. Therefore, the accounts are often closed. ZHANG's description of the fraud schemes highlighted a problem that ZHANG and his associates discussed regularly with the UCs and CWs during this investigation and worked to overcome, namely, finding ways to extract funds from the accounts to which fraud victims send money without leaving a trail of accounts that can be traced to the fraudsters who were responsible for tricking the victims into parting with their money.

35.     ZHANG's January 27, 2022 Pick Up of $190,000 At Frank Pepe's Pizza in New Haven, Connecticut. Beginning on January 25, 2022, ZHANG and UC-2 began to plan for a $200,000 money bulk cash pick up. At about 8:27 p.m., UC-2 sent ZHANG a message over Telegram: "Cash pick up about noon?" ZHANG responded, "Will know by 11 pm after my guy

pick the find [sic] funds." On January 26, 2022, UC-2 texted ZHANG, "How's it looking bro?" ZHANG responded, "Still Waiting for answers since morning." At 2:22, ZHANG sent a message, "I thnk [sic] need to be rescheduled" and UC-2 replied "OK, let m know" and told him he was holding Tether for him. At 8:29 p.m., ZHANG called UC-2 and they arranged to conduct a $190,000 bulk cash pick up the next day. UC-2 sent ZHANG the address "Frank Pepe Pizzeria Napoletana, 14 Wooster Street, New Haven, CT" at 1:00 p.m. UC-2 told ZHANG that he and CW-2 would meet him there. UC-2 told ZHANG, "I'll buy you lunch if you come" and ZHANG replied "hahaha thanks."

36.    On January 27, 2022, a surveillance team accompanied UC-2, CW-2, and another undercover agent posing as an employee of UC-2 to the restaurant. At 12:48 p.m., UC-2 sent a message to ZHANG over Telegram: "We are here having lunch." ZHANG responded, "Enjoy will be there 26 minutes." At 1:13 p.m., ZHANG texted UC-2, "I'm here." UC-2 replied, "You wanna come in or you want [CW-2] to come out?" ZHANG told UC-2, "Just send her out." UC-2 responded, "OK she's coming." Three minutes later, ZHANG texted UC-2, "190k only" and "Not 200k." UC-2 responded, "Ok take fee of [sic] the top?" ZHANG responded, "Yes you can." UC-2 did the math, "Ok I will send 186200," then asked ZHANG "same wallet as before?" Over Telegram, ZHANG forwarded UC-2 the address for the digital wallet.

37.    Agents saw CW-2 and the UC walk out of the restaurant and enter a white Toyota sedan. Agents saw two men in the car. CW-2 entered the Toyota alone. ZHANG was in the front passenger seat and an Asian male was in the driver's seat. ZHANG told CW-2 that it was risky to bring the money inside the pizzeria and that he felt more comfortable in the car. ZHANG told CW-2 that he needed UC-2 to launder larger amounts of money because the current volume was too small. ZHANG also asked CW-2 if CW-2 had heard about the fact that one of his money couriers

15

had stolen $200,000 from him last week. CW-2 was handed a bag of money by ZHANG. CW-2 contacted UC-2, who wired the Tether to ZHANG's digital wallet. Once UC-2 confirmed that the deal was done (he texted a screen shot of the Tether exchange to ZHANG over Telegram), CW-2 and the undercover agent walked back into the restaurant carrying the bag of cash and the Toyota drove off. The bag contained $190,000 in cash.

38.     On January 30, 2022, ZHANG and UC-2 exchanged messages over Telegram about a $25,000 wire transfer. ZHANG confirmed the account number with UC-2 and UC-2 asked whether the exchange would take place today and ZHANG replied, "tomorrow." On January 31, 2022, at 11:36 a.m., ZHANG used Telegram to send UC-2 an image of the Bank of America receipt showing the $25,000 wire transfer to an FBI undercover account, along with the text, "T5." At 11:52 a.m., ZHANG texted UC-2, "please check." At 1:35 p.m., UC-2 responded "OK," "It's processing, should clear in an hour and I will send 24250," and "Same wallet?" ZHANG responded "yes." After this exchange, ZHANG sent UC-2 a fifteen second audio message about a deal in a few days (after Chinese New Year): ZHANG explained the source of these funds: "it's like gambling money . . . its's not, umm, scam money . . . it's gambling money, right now I'm testing, they are sending the money to my account first, if it's ok, I'm thinking of sending some of the money to your account. Is that ok?"

39.     ZHANG's Drug Trafficking. On or about August 11, 2022, agents recorded communications between ZHANG and UC-2 over Telegram. In the messages, ZHANG advised UC-2 that he had sent three (3) kilograms of cocaine to the Boston area for sale. UC-2 agreed to pay ZHANG for a portion of the cocaine now and pay for the remaining cocaine at a later date. UC-2 and ZHANG agreed that ZHANG would be paid for the cocaine in cryptocurrency transferred to a digital wallet provided by ZHANG.

16

40.     ZHANG then had his courier ("Courier 1") contact CW-1, who was working with UC-2. By text message, Courier 1 advised CW-1 that the cocaine would be available for pick up the following day in Chinatown, a Boston neighborhood. Courier 1 and CW-1 arranged to meet around 11:00 a.m. near the South Station MBTA terminal, near Chinatown.

41.     On August 12, 2022, at approximately 10:50 a.m., agents met with CW-1 near South Station. Agents searched CW-1 to make sure CW-1 was free of money or contraband and equipped CW-1 with a transmitter and an audio-video recording device. Thereafter, CW-1 drove to meet Courier 1 and pick up the three (3) kilograms of cocaine.

42.     At South Station, CW-1 called Courier 1 on the number provided by ZHANG. A few minutes later, Courier 1 arrived. Courier 1 and CW-1 got into CW-1's vehicle. Courier 1 told CW-1 that they "needed to drive to where the cocaine was" and directed them a short distance away to Beach Street in Chinatown. Once parked on Beach Street, agents observed a tall, young, thin Asian male ("Courier 2") enter CW-1's car carrying a backpack. While inside the car, Courier 2 pulled a cardboard box from the backpack and left the box for CW-1. Inside the box were two kilograms of cocaine in vacuum sealed bags and one kilogram of cocaine inside a clear plastic bag. Courier 1 and Courier 2 then got out of the vehicle and walked away on foot toward Chinatown.

43.     Agents followed CW-1 back to a predetermined meeting location. CW-1 was again searched and found to be free of money or contraband. Agents downloaded the video recording of the meeting which captured the meeting between CW-1, Courier 1, and Courier 2. Agents conducted a field test on the substance in the box and the test returned a positive result for the presence of cocaine, a Schedule II controlled substance. The approximate weight of the bags with packaging was 3,432.0 grams. After the meeting, UC-2 used Tether to pay ZHANG for one kilogram of cocaine (UC-2 sent the funds to a digital wallet provided by ZHANG).

17

44.     During the investigation, ZHANG also communicated with UC-2 to arrange and facilitate the delivery of additional controlled substances. Over Telegram, ZHANG negotiated with UC-2 and subsequently directed ZHANG Organization couriers to make the following drug deliveries to FBI UCs and/or CW-1:

| Date | Location | Controlled Substance | Quantity |
|------|----------|---------------------|----------|
| May 25, 2022 | Jersey City, NJ | Cocaine | 1,077.1 g |
| July 14, 2022 | Jersey City, NJ | MDMA | 1,035.4 g |
| September 5, 2022 | Boston, MA | Cocaine | 2,416.9 g |

45.     Conclusion. Based on the information set forth above, I submit that there is probable cause to believe that the Targets conspired to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). I also believe there is probable cause to believe that ZHANG conspired to distribute and to possess with intent to distribute 5 kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846.

I, Benjamin Wallace, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

/s/ Benjamin Wallace

Benjamin Wallace
Special Agent
Federal Bureau of Investigation

Signed electronically and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this 7th day of October 2022.



The Honorable M. Page Kelley
Chief United States Magistrate Judge

18

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 22-6321-MPK |
| (1) Jin Hua ZHANG | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*  Jin Hua ZHANG                                                                      ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment          ☐ Superseding Indictment          ☐ Information          ☐ Superseding Information          ☑ Complaint
☐ Probation Violation Petition          ☐ Supervised Release Violation Petition          ☐ Violation Notice          ☐ Order of the Court

This offense is briefly described as follows:

21 U.S.C. § 846 - Conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine

18 U.S.C. § 1956(h) - Conspiracy to commit money laundering

Date:     10/07/2022                                                                      _____
                                                                                         *Issuing officer's signature*

City and state:     Boston, MA                                           Hon. M. Page Kelley, U.S. Chief Magistrate Judge
                                                                                         *Printed name and title*

| Return |
|--------|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                              _____ <br> *Arresting officer's signature* <br><br> _____ <br> *Printed name and title* |

# EXHIBIT B

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

United States of America )
v. )
)
(8) Rongjian LI, (9) Qinliang CHEN, (10) Yanbing )  Case No.  22-6322-MPK
CHEN, and (11) Xiong LIN )
)
)
_____ )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 2021 to present _____ in the county of ___ Suffolk and elsewhere ___ in the
_____ District of ___ Massachusetts ___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering |
| 21 U.S.C. § 846 | Conspiracy to distribute and to possess with intent to distribute 5 kilograms and/or 500 grams or more of cocaine |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Benjamin Wallace

☑ Continued on the attached sheet.

/s/ Benjamin Wallace
_____
*Complainant's signature*

Benjamin Wallace, FBI Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___ 10/12/2022 ___

Page Kelley
_____
*Judge's signature*

City and state: ___ Boston, Massachusetts ___      Hon. M. Page Kelley, U.S. Chief Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Benjamin Wallace, Special Agent, Federal Bureau of Investigation ("FBI"), being sworn, state as follows:

1.　　　I am a Special Agent with the FBI's Boston Field Office. I have worked for the FBI since 2009. Before joining the FBI, I was a Special Agent with the United States Secret Service ("USSS") for approximately four years. Before that, I worked as a police officer with the City of Atlanta, Georgia Police Department for approximately five years.

2.　　　I am presently assigned to FBI Boston's Organized Crime Task Force (the "FBI Task Force"). The mission of the FBI Task Force is to identify, investigate, disrupt and dismantle sophisticated criminal organizations operating in Massachusetts, with a particular focus on those groups connected to national or transnational criminal networks that pose the greatest threat to the national and economic security of the United States. The FBI Task Force utilizes a broad array of techniques to conduct these investigations, including utilizing information received from confidential human sources; examining and exploiting telephone, social media, and financial records; and embedding undercover agents in dangerous groups that are difficult to infiltrate.

3.　　　On October 7, 2022, I submitted an affidavit in support of an application for a criminal complaint charging that, from in or about May 2021 to the present, (1) Jin Hua ZHANG, (2) Licheng HUANG, (3) Feng CHEN, (4) Roger LUO, (5) Thong NGUYEN, (6) Augustin VILLA, and (7) Mariano SANTANA conspired to commit money laundering, in violation of Title 18, United States Code, Section 1956(h), and that during the same time period, ZHANG conspired to distribute and to possess with intent to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846. That day, this Court

issued the complaint. See No. 22-6321-MPK, attached hereto as Exhibit 1 and incorporated by reference herein (hereinafter, the "October 7, 2022 Complaint").

4. I submit this affidavit in support of an application for a criminal complaint charging that, from in or about May 2021 to the present, (8) Rongjian LI and (9) Qinliang CHEN conspired with ZHANG and others to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). In addition, during the same time period, (10) Yanbing CHEN and (11) Xiong LIN conspired with ZHANG and others to distribute and to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846. Specifically, (10) Yanbing CHEN conspired to distribute and to possess with intent to distribute five kilograms or more of cocaine and (11) LIN conspired to distribute and to possess with intent to distribute 500 grams or more of cocaine.

5. As is set out in detail in Exhibit 1, the FBI Task Force used cooperating witnesses ("CWs") and undercover agents ("UCs") to infiltrate a criminal organization that was led by ZHANG and laundered large sums of money for various criminal groups. Agents on the FBI Task Force first detected the network in greater Boston but also identified leaders and members of the group throughout the United States and overseas. Over the past year, agents determined that ZHANG and his associates (the "ZHANG Organization") laundered at least $25 million worth of drug proceeds and profits from other illegal businesses. To date, agents have traced funds from the ZHANG Organization to Hong Kong and elsewhere in China, India, Cambodia, and Brazil, among other locations. The investigation also revealed that the ZHANG Organization distributed kilogram-sized quantities of cocaine, a Schedule II controlled substance, and MDMA, or ecstasy, a Schedule I controlled substance, to FBI CWs and UCs.

2

6. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts necessary to establish probable cause to believe that LI, Qinliang CHEN, Yanbing CHEN, and LIN committed the violations set forth in the accompanying criminal complaint.

7. <u>LI's Participation in the ZHANG Money Laundering Conspiracy</u>. On April 3, 2022, UC-1 and UC-2 had dinner in a restaurant in Brooklyn with ZHANG, a second New York-based associate of ZHANG's, and an individual who agents identified as Rongjian LI. ZHANG introduced LI to UC-1 as his friend who worked at Bank of America. During this investigation, agents determined that "Rong Li" was a Bank of America employee who opened several accounts that ZHANG Organization members used to launder illicit funds. Agents obtained Bank of America records showing that LI frequently ran queries checking on the status of these accounts.

8. During the dinner meeting on April 3, 2022, with LI present throughout, UC-2 discussed UC-2's concerns about ZHANG making Zelle transfers to UC-2's accounts because law enforcement was aware that Zelle was used to commit fraud.[1] LI agreed and told UC-2 about a particular scam, where a fraudster would contact a telephone company and, using a victim's name, report that he had lost his phone and request that the phone company issue him a new SIM card. The fraudster would then use information from this newly-issued SIM card to access the victim's Zelle account. Based on my training and experience in this case, I know that a scammer accessing a victim's Zelle account could transfer funds out of the victim's account and into an account controlled by the fraudster.

_____

[1] Zelle is a digital payment network that enables individuals to electronically transfer money from the bank account of the sender to the account of another registered user, typically involving the registration of a telephone number or email address.

3

9.      With LI present, ZHANG discussed with the UCs the location and volume of future cash pick-ups and sources of illicit funds to be laundered. ZHANG explained that if UC-1 wanted to earn a higher point (a higher fee for laundering the money), then UC-1 had to accept direct transfers from the clients (meaning, the fraud victims) instead of receiving funds from one of ZHANG's intermediary shell companies. UC-1 said the current operation – receiving funds through ZHANG's shell companies –was the safest way to do business because UC-1 had set up an account specifically for UC-2 to use to convert ZHANG's deposits to cryptocurrency. ZHANG agreed to keep their business arrangement the same. UC-1 stated that UC-1 would continue to charge three points for direct transfers from ZHANG's account if the money was from "T5" fraud (as was described in the October 7, 2022 Complaint, T5 refers to fraud proceeds). However, if ZHANG transferred "white powder" (cocaine) money and told UC-1 it was from T5, then ZHANG put everyone at risk.

10.     With LI still present, ZHANG discussed investment fraud operations in Cambodia and his partnership with the UCs to lauder the illicit proceeds from ZHANG's Cambodia-based associates. ZHANG told the group at the dinner that Cambodia was just a place where people were working (perpetrating the defrauding of victims through use of the internet and phone) and that all the clients (i.e., victims) were here, meaning in the United States. ZHANG told those at the table, including LI, "So some team (the fraud group) is still in China to operate this, some more team operate this in Cambodia, because Cambodia is, you're not gonna get caught, you know?" Based on my training and experience in this case, ZHANG's statement meant that the organizers of the group that was engaged in defrauding U.S.-based victims were based in China. However, the people who were engaged in running the day-to-day fraud operations were based in Cambodia. UC-2 said, "Yeah, so all the clients are here, but all the business is done in Cambodia so the

4

transfers are out of Cambodia. But it's the same type, right? Just T5?" Again with LI present, ZHANG replied, "Yeah."

11.     ZHANG told the group that he had many accounts but that he does not give his clients (i.e., his money laundering customers) all of his accounts at once. ZHANG used one or two accounts at any given time until they "die," meaning when bank security or law enforcement freezes the account. ZHANG indicated that this normally takes one month. ZHANG said that each account would do at least one million dollars in one month before it died. ZHANG said he has clients from China, Cambodia, New York, and elsewhere, and whatever risk UC-1 was willing to share, ZHANG was willing to share in the profit.

12.     On April 18, 2022, UC-2 had a consensually recorded Telegram call with ZHANG. During the call, UC-2 told ZHANG that a Bank of America account into which ZHANG was depositing money was fine. ZHANG informed UC-2 that his associate, who worked at Bank of America (LI), told him that UC-2's account had a lot of alerts on it. As a result, UC-2 and ZHANG agreed to use a different bank for future money laundering transactions. After these recorded conversations, agents learned that LI had resigned from Bank of America. Within the past month, when ZHANG confided to UC-2 that he had had a couple of accounts frozen and asked UC-2 for help, UC-2 responded by saying, "What about your guy at Bank of America?" ZHANG responded, "No he's not there anymore."

13.     In summary, LI was aware of ZHANG's money laundering conspiracy through his participation in lengthy conversations during which ZHANG and others discussed multiple money laundering schemes. Moreover, during the charged time period, LI knowingly took steps to further the objectives of the conspiracy, such as opening several accounts that ZHANG used to launder funds through UC-2, and regularly checking on the status of those accounts. ZHANG confirmed

5

LI's role in the conspiracy by telling UC-2 that "his guy" had left Bank of America shortly after LI had resigned from the bank. All of this evidence establishes LI as a member of ZHANG's money laundering conspiracy.

14.     Agents Seize $161,905 From Qinliang CHEN. The October 7, 2022 Complaint identified several instances in this investigation where couriers delivered large amounts of cash to CWs and the UCs and ZHANG directed UC-2 to provide an equivalent amount of Tether, minus a fee. During the investigation, agents identified California-based drug courier Qinliang CHEN, who delivered more than $120,000 in cash to an FBI CW. ZHANG asked UC-2 to provide Tether in exchange for the cash. Qinliang CHEN made the delivery at a grocery store parking lot near Orlando, Florida. At a second meeting in Florida, law enforcement seized $161,905 from Qinliang CHEN as he tried to make a second delivery of ZHANG's to-be-laundered cash.

15.     In mid-August 2022, ZHANG used Telegram to inform UC-2 that there was approximately $120,000 in cash that needed to be picked up in Orlando, Florida. On August 19, 2022, agents traveled with CW-1 to a Publix parking lot at 851 South State Road 434 in Altamonte Springs (near Orlando), Florida.  There, CW-1 picked up a bag containing $125,675 in cash from a Chinese courier who arrived in a rented minivan. In exchange for the cash, UC-2 sent ZHANG an equivalent amount of Tether, minus a fee. The cell phone number that the courier used to communicate with CW-1, (626) 554-7241, did not have identifiable subscriber information. However, the minivan that the courier used to make the delivery was rented to Qinliang CHEN. The phone number on file with the rental car company was associated with Qinliang CHEN and he provided the rental car company his home address in Rosemead (Los Angeles County), California. Agents showed CW-1 Qinliang CHEN'S driver's license photo and CW-1 identified him as the courier. Agents also identified Qinliang CHEN from the video recording of the meeting

6

with CW-1. After this meeting, agents reviewed a report that on April 19, 2020, Qinliang CHEN attempted to pass through TSA Security at Orlando International Airport carrying $99,780 in cash.

16.     On September 12, 2022, ZHANG used Telegram to inform UC-2 that there was approximately $150,000 in cash that needed to be picked up in Orlando. UC-2 told ZHANG that CW-2 would be in Florida and could collect the cash. Agents believed that Qinliang CHEN would again make the delivery and moved to seize the cash.

17.     On September 13, 2022, CW-2 advised that she had a missed call from an as-yet unidentified dispatcher working for ZHANG. The dispatcher contacted CW-2 to ask in Mandarin, "Are you there?" Based on the context, the dispatcher's message was an inquiry regarding CW-2's availability to receive the cash.  CW-2 responded that CW-2 was available. CW-2 then called the phone Qinliang CHEN used during the August 19, 2022 deal, telephone number (626) 554-7241, and they agreed that CW-2 would pick up the cash on September 15, 2022.

18.     On September 14, 2022, CW-2 sent the dispatcher a text message containing a photo of a dollar bill, which would serve as the pick-up token (as described in the October 7, 2022 Complaint), and the location for the meet. The delivery would occur at the previously used Publix parking lot at 851 South State Road 434 in Altamonte Springs, at 11:00 a.m. The dispatcher contacted CW-2 and asked to reschedule the money pick up for September 16, 2022, and CW-2 agreed to pick up the money that day at the same location.

19.     On September 16, 2022, at 10:30 a.m., agents were with CW-2 when CW-2 received a telephone call from telephone number (626) 554-7241, a telephone number used by Qinliang CHEN. As agents recorded the call, CW-2 confirmed the meeting time, and Qinliang CHEN told CW-2 that he would be driving a minivan. Qinliang CHEN sent CW-2 an image of the rear of his Chrysler Pacifica minivan with Florida registration EVTF17 (another rented van).

7

Qinliang CHEN moved the meeting location slightly, to 971 North State Road 434, and confirmed the 11:00 a.m. meeting time.

20.     At 10:46 a.m., an FBI surveillance team in Florida observed Qinliang CHEN's minivan arrive in the specified parking lot. Agents requested that Altamonte Springs Police Department officers approach the minivan. Qinliang CHEN was in the driver's seat, and a woman, later identified as his sister, was in the second row of the van behind the driver's seat. Officers asked Qinliang CHEN why he was sitting in a parking lot, and he replied that he was waiting for a restaurant to open. The officer asked if he could search the vehicle, and after a conversation with his sister, Qinliang CHEN said yes. During a search of the van, officers recovered a black duffel bag in a storage compartment in the floor behind the front seats. When asked, both Qinliang CHEN and his sister denied that the bag belonged to them. Qinliang CHEN said he had rented the car and had not checked the storage compartment. The officers opened the bag and emptied the contents onto the ground: two vacuum sealed bags of cash and one bag of banded cash. The officers said that since the bag was not being claimed by Qinliang CHEN or his sister, they were going to seize it as evidence. Officers provided Qinliang CHEN and his sister a receipt, and they were allowed to leave. Agents determined that the bag contained $161,905 in cash.

21.     Later that day, CW-2 exchanged recorded text messages with ZHANG's dispatcher and Telegram calls and messages with ZHANG. When they demanded to know what happened, CW-2 told both ZHANG and the dispatcher that CW-2 arrived at the parking lot and observed the police stop the courier's minivan.

22.     Yanbing CHEN and LIN's Participation in ZHANG's Drug Trafficking Conspiracy. As was set forth in the October 7, 2022 Complaint, on or about August 11, 2022, agents recorded Telegram communications between ZHANG and UC-2. In the messages, ZHANG

8

advised UC-2 that he had sent three kilograms of cocaine to the Boston area for sale. UC-2 agreed to pay ZHANG for a portion of the cocaine upon receipt and pay for the remaining cocaine at a later date. UC-2 and ZHANG agreed that ZHANG would be paid for the cocaine in cryptocurrency transferred to a digital wallet provided by ZHANG.

23.     ZHANG then had his courier contact CW-1, who was working with UC-2. In the October 7, 2022 Complaint, I referred to this individual as "Courier 1." Agents have identified "Courier 1" as Yanbing CHEN. By text message, Yanbing CHEN advised CW-1 that the cocaine would be available for pick up the following day in Chinatown, a Boston neighborhood. Yanbing CHEN and CW-1 arranged to meet around 11:00 a.m. around the South Station MBTA terminal, near Chinatown.

24.     On August 12, 2022, at approximately 10:50 a.m., agents met with CW-1 near South Station. Agents searched CW-1 to make sure CW-1 was free of money or contraband and equipped CW-1 with a transmitter and an audio-video recording device. Thereafter, CW-1 drove to meet Yanbing CHEN and pick up the three (3) kilograms of cocaine.

25.     At South Station, CW-1 called Yanbing CHEN on the number provided by ZHANG. A few minutes later, Yanbing CHEN arrived. Yanbing CHEN and CW-1 got into CW-1's vehicle. According to CW-1, Yanbing CHEN told CW-1 that they needed to drive to where the cocaine was and directed them a short distance away to Beach Street in Chinatown. Once Yanbing CHEN and CW-1 parked on Beach Street, agents observed a tall, young, thin as-yet unidentified Asian male ("Courier 2") enter CW-1's car carrying a backpack. While inside the car, Courier 2 pulled a cardboard box from the backpack and left the box for CW-1. Inside the box were two kilograms of cocaine in vacuum sealed bags and one kilogram of cocaine inside a clear

9

plastic bag. Yanbing CHEN and Courier 2 then got out of the vehicle and walked away on foot toward Chinatown.

26.     Agents followed CW-1 back to a predetermined meeting location. CW-1 was again searched and found to be free of money or contraband. Agents downloaded the video recording of the meeting which captured the meeting between CW-1, Yanbing CHEN, and Courier 2. Agents conducted a field test on the substance in the box, and the test returned a positive result for the presence of cocaine, a Schedule II controlled substance. The approximate weight of the bags with packaging was 3,432 grams. After the meeting, UC-2 used Tether to pay ZHANG for one kilogram of cocaine. (UC-2 sent the funds to a digital wallet provided by ZHANG).

27.     In addition to this three-kilogram sale, which was described in detail in the October 7, 2022 Complaint, agents obtained a total of three additional kilograms of cocaine from ZHANG. Beginning with a series of calls and Telegram chats on September 2, 2022, ZHANG and Yanbing CHEN facilitated the delivery of two more kilograms of cocaine in Boston. UC-2 asked ZHANG whether he planned to deliver additional quantities of cocaine, stating "[Y]our guy still coming up with stuff on Monday or Tuesday?" ZHANG responded, "Sunday I guess," and indicated that he would "pass to [CW-1]."

28.     On September 4, 2022, ZHANG asked UC-2 to give CW-1 a bank check to deliver to ZHANG's courier when picking up the cocaine. On September 5, 2022, at approximately 8:59 a.m., Yanbing CHEN met CW-1 near the intersection of Lincoln Street and Beach Street in Boston. CW-1 handed Yanbing CHEN the bank check that ZHANG had ask UC-2 to send with CW-1. Yanbing CHEN then got into the backseat of CW-1's car and removed two kilograms of cocaine from his backpack. Agents subsequently conducted a field test on the substance and the test returned a positive result for the presence of cocaine, a Schedule II controlled substance. After the

10

delivery, UC-2 confirmed that he received the drugs with a Telegram message to ZHANG stating, "Bro, got the stuff."

29.     In addition to those five kilograms of cocaine, on May 8-9, 2022, ZHANG and UC-2 used Telegram to discuss ZHANG's providing a cocaine sample that UC-2 could use to evaluate the product and determine whether he would purchase larger quantities. In the exchange, ZHANG sent an image of a kilogram of cocaine to UC-2 and identified it as "coke." During a recorded call on May 11, 2022, ZHANG asked UC-2 about the cocaine sample.  ZHANG stated that his friend, the supplier, said the product is "99% pure."  ZHANG suggested that UC-2 "make it less pure." Based on my training and experience, I believe that ZHANG meant that UC-2 could add cutting agents to the cocaine to increase the quantity available for sale, a common practice for experienced drug dealers. ZHANG stated, "if you can move it, then we should talk about it."  UC-2 indicated that he would be in a position to finalize the deal after discussing it with his (fictious) partner.

30.     On May 15, 2022, ZHANG and UC-2 agreed that ZHANG would sell UC-2 one kilogram of cocaine for $27,000. UC-2 would be responsible for accepting delivery in the New York area to bring to Boston, and after ZHANG provided the cocaine, UC-2 would pay ZHANG with Tether. On May 18, 2022, ZHANG used Telegram to send UC-2 a voice message in which he confirmed that the cocaine would be delivered on May 25, 2022. ZHANG indicated that he would arrange for a bulk cash delivery on the same day, but he explained that there would be separate deliveries for the cash and cocaine.

31.     On May 25, 2022, ZHANG facilitated the delivery of one kilogram of cocaine in Jersey City, New Jersey. On the day of the delivery, CW-1 and ZHANG communicated via Telegram to select the meeting place. CW-1 and an undercover agent drove to the pre-arranged delivery location and waited for ZHANG's drug courier. However, a few minutes later, ZHANG

used Telegram to direct CW-1 to another location, where his courier would be waiting in a black Toyota. When CW-1 and the undercover agent arrived at the second location, they met Xiong LIN, who was seated in the driver's seat of a black Camry that was registered in his name. LIN handed the undercover agent a shopping bag containing approximately one kilogram of cocaine. LIN was identified by agents who reviewed the video of the meeting. Agents conducted a field test on the substance and the test returned a positive result for cocaine, a Schedule II controlled substance.[2]

32.    <u>Conclusion</u>. Based on the information set forth above, I submit that there is probable cause to believe that (8) Rongjian LI and (9) Qinliang CHEN conspired with ZHANG and others to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). In addition, during the same time period, (10) Yanbing CHEN and (11) Xiong LIN conspired with ZHANG and others to distribute and to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846. Specifically, (10) Yanbing CHEN conspired to distribute and to possess with intent to distribute five kilograms or more of cocaine and (11) LIN conspired to distribute and to possess with intent to distribute 500 grams or more of cocaine.

---

[2] As was discussed in the October 7, 2022 Complaint, LIN also delivered a kilogram of MDMA at ZHANG's direction.

I, Benjamin Wallace, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

/s/ Benjamin Wallace
_____
Benjamin Wallace
Special Agent
Federal Bureau of Investigation

Signed electronically and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this 12th day of October 2022.

_____
The Honorable M. Page Kelley
Chief United States Magistrate Judge

13

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.. 22-6322-MPK |
| (10) Yanbing CHEN | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant*

## ARREST WARRANT

To:      Any authorized law enforcement officer

        **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     Yanbing Chen                                          ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☑ Complaint

☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:

    21 U.S.C. § 846 - Conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine

Date:      10/12/2022                                                     
*Issuing officer's signature*

City and state:      Boston, MA                    Hon. M. Page Kelley, U.S. Chief Magistrate Judge
                                                            *Printed name and title*

| Return |
|---|

        This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____

at *(city and state)* _____ .

Date: _____                                                   
*Arresting officer's signature*

                                                                 
*Printed name and title*

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| (8) Rongjian LI | ) | Case No. 22-6322-MPK |
| | ) | |
| | ) | |
| | ) | |
| Defendant | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Rongjian LI                                                                                          ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment          ☐ Superseding Indictment          ☐ Information          ☐ Superseding Information          ☑ Complaint
☐ Probation Violation Petition          ☐ Supervised Release Violation Petition          ☐ Violation Notice          ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1956(h) - Conspiracy to commit money laundering

Date:     10/12/2022

_____
*Issuing officer's signature*

City and state:     Boston, MA

Hon. M. Page Kelley, U.S. Chief Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____          _____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |

# EXHIBIT C

7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.   22-cr-10279 |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| (1) JIN HUA ZHANG, | ) | Count One: Money Laundering Conspiracy |
| (2) LICHENG HUANG, | ) | (18 U.S.C. § 1956(h)) |
| (3) FENG CHEN, | ) | |
| (4) ROGER LUO, | ) | Count Two: Conspiracy to Distribute and to |
| (5) THONG NGUYEN, | ) | Possess with Intent to Distribute Controlled |
| (6) AUGUSTIN VILLA, | ) | Substances |
| (7) MARIANO SANTANA, | ) | (21 U.S.C. § 846) |
| (8) RONGJIAN LI, | ) | |
| (9) QINLIANG CHEN, | ) | Money Laundering Forfeiture Allegation: |
| (10) YANBING CHEN, and | ) | (18 U.S.C. § 982(a)(1)) |
| (11) XIONG LIN, | ) | |
| | ) | Drug Forfeiture Allegation: |
| Defendants | ) | (21 U.S.C. § 853) |

INDICTMENT

COUNT ONE
Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

The Grand Jury charges:

From in or about May 2021 through in or about September 2022, in the District of

Massachusetts, the Eastern District of New York, the District of Connecticut, the District of New

Jersey, the Central District of California, the Middle District of Florida, and elsewhere, the

defendants,

(1) JIN HUA ZHANG,
(2) LICHENG HUANG,
(3) FENG CHEN,
(4) ROGER LUO,
(5) THONG NGUYEN,

1

(6) AUGUSTIN VILLA,
(7) MARIANO SANTANA,
(8) RONGJIAN LI,
(9) QINLIANG CHEN and
(10) YANBING CHEN,

conspired with each other and others known and unknown to the Grand Jury to conduct and attempt to conduct financial transactions, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and the distribution of controlled substances, in violation of Title 21, United States Code, Section 841, and knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

COUNT TWO
Conspiracy to Distribute and to Possess with Intent to Distribute
Controlled Substances
(21 U.S.C. § 846)

The Grand Jury further charges:

From at least in or about May 2022 through at least in or about September 2022, in the

District of Massachusetts, the District of New Jersey, and elsewhere, the defendants,

(1) JIN HUA ZHANG,
(10) YANBING CHEN, and
(11) XIONG LIN,

conspired with each other and other persons known and unknown to the Grand Jury to knowingly

and intentionally distribute and possess with intent to distribute controlled substances, in violation

of Title 21, United States Code, Section 841(a)(1).

It is further alleged that the offense charged in Count Two involved five kilograms or more

of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled

substance. Accordingly, Title 21, United States Code, Section 841(b)(1)(A)(ii) is applicable to

this Count.

It is further alleged that, with respect to Count Two, five kilograms or more of a mixture

and substance containing a detectable amount of cocaine, a Schedule II controlled substance, were

reasonably foreseeable by, and are attributable to (1) JIN HUA ZHANG and (10) YANBING

CHEN. Accordingly, Title 21, United States Code, Section 841(b)(1)(A)(ii) is applicable to

defendants (1) JIN HUA ZHANG and (10) YANBING CHEN.

It is further alleged that, with respect to Count Two, 500 grams or more of a mixture and

substance containing a detectable amount of cocaine, a Schedule II controlled substance, were

reasonably foreseeable by, and are attributable to (11) XIONG LIN. Accordingly, Title 21, United

States Code, Section 841(b)(1)(B)(ii) is applicable to defendant (6) XIONG LIN.

It is further alleged that the offense charged in Count Two involved 3,4-Methylenedioxymethamphetamine, also known as "MDMA" and "ecstasy," a Schedule I controlled substance. Accordingly, Title 21, United States Code, Section 841(b)(1)(C) is applicable to this Count.

It is further alleged that, with respect to Count Two, 3,4-Methylenedioxymethamphetamine, also known as "MDMA" and "ecstasy," a Schedule I controlled substance, was reasonably foreseeable by, and is attributable to (1) JIN HUA ZHANG and (6) XIONG LIN. Accordingly, Title 21, United States Code, Section 841(b)(1)(C) is applicable to defendants (1) JIN HUA ZHANG and (11) XIONG LIN.

All in violation of Title 21, United States Code, Section 846.

4

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

1.    Upon conviction of the offense in violation of Title 18, United States Code, Section 1956(h), set forth in Count One, the defendants,

(1) JIN HUA ZHANG,
(2) LICHENG HUANG,
(3) FENG CHEN,
(4) ROGER LUO,
(5) THONG NGUYEN,
(6) AUGUSTIN VILLA,
(7) MARIANO SANTANA,
(8) RONGJIAN LI,
(9) QINLIANG CHEN and
(10) YANBING CHEN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

2.    If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendants --

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 1 above.

5

All pursuant to Title 18, United States Code, Section 982(a)(1).

## DRUG FORFEITURE ALLEGATION
### (21 U.S.C. § 853)

1. Upon conviction of the offense in violation of Title 21, United States Code, Section 846, set forth in Count Two, the defendants,

(1) JIN HUA ZHANG,
(10) YANBING CHEN, and
(11) XIONG LIN,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendants --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 1 above.

All pursuant to Title 21, United States Code, Section 853.

7

A TRUE BILL

FOREPERSON

CHRISTOPHER POHL
BRIAN A. FOGERTY
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: October 13, 2022

Returned into the District Court by the Grand Jurors and filed.

/s/ Dawn M. King 12:30pm

DEPUTY CLERK

**United States District Court, Eastern District of New York**

| UNITED STATES OF AMERICA | **ORDER SETTING CONDITIONS OF RELEASE** |
|---|---|
| V. | **AND APPEARANCE BOND** |

Yanbing Chen , Defendant.

Case Number: 22 CR 458 (LDH)

## RELEASE ORDER

It is hereby ORDERED that the above-named defendant be released subject to the Standard Conditions of Release on the reverse and as follows:

[ ] Upon **Personal Recognizance Bond** on his/her promise to appear at all scheduled proceedings as required, or

[✓] Upon **Bond** executed by the defendant in the amount of $ 120,000 , and

secured by [ ] financially responsible sureties listed below and/or [ ] collateral set forth below.

## Additional Conditions of Release

The Court finding that release under the Standard Conditions of Release on the reverse will not by themselves reasonably assure the appearance of the defendant and/or the safety of other persons and the community, IT IS FURTHER ORDERED as follows:

[✓] 1. The defendant must remain in and may not leave the following areas without Court permission: [✓] New York City; [✓] Long Island, NY; [ ] New York State; [ ] New Jersey; [✓] MA for court and travel to and from this Court and the permitted areas.

[✓] 2. The defendant must avoid all contact with the following persons or entities: no dtts except in the presence of counsel.

[ ] 3. The defendant must avoid and not go to any of the following locations: _____

[✓] 4. The defendant must surrender all passports to Pretrial Services by _____ and not obtain other passports or international travel documents.

[✓] 5. The defendant is placed under the supervision of the Pretrial Services Agency subject to the Special Conditions on the reverse and:

  [✓] a. is subject to random visits by a Pretrial Services officer at defendant's residence and/or place of work;

  [✓] b. must report [✓] as directed by Pretrial Services or [ ] in person ___ times per ___ and/or [ ] by telephone ___ times per ___.

  [ ] c. must undergo [ ] testing, [ ] evaluation and/or [ ] treatment for substance abuse, including alcoholism, as directed by Pretrial Services.

  [ ] d. must undergo evaluation and treatment for mental health problems, as directed by Pretrial Services.

  [✓] e. is subject to the following location restriction program with location monitoring, as directed by Pretrial Services:

  [ ] home incarceration: restricted to home at all times, except for attorney visits, court appearances and necessary medical treatment;

  [ ] home detention: restricted to home at all times, except for attorney visits, court appearances, medical treatment, [ ] religious services,

  [ ] employment, [ ] school or training, [ ]other activities approved by Pretrial Services, [ ] _____

  [✓] curfew: restricted to home every day from _____ to _____, or [✓] as directed by Pretrial Services.

  [ ] Defendant must pay all or part of the cost of any required testing, evaluation, treatment and/or location monitoring with personal funds, based upon ability to pay as determined by the Court and the Pretrial Services Agency, and/ or from available insurance.

[ ] 6. Other Conditions: _____

## APPEARANCE BOND

I, the undersigned defendant, and each surety who signs this bond, acknowledge that I have read this Appearance Bond and, and have either read all the other conditions of release or have had those conditions explained. I further acknowledge that I and my personal representatives, jointly and severally, are bound to pay the United States of America the sum of $_____ and that this obligation is secured with the below interest in the following property ("Collateral") which I represent is/are free and clear of liens except as otherwise indicated:

[ ] cash deposited in the Registry of the Court in the sum of $_____;

[ ] premises located at:_____ owned by_____

[ ] I also agree to execute a confession of judgment, mortgage or lien in form approved by the U.S. Attorney which shall be duly filed with the proper local and state authorities on or before _____

Each owner of the above Collateral agrees not to sell the property, allow further claims or encumbrances to be made against it, or do anything to reduce its value while this Appearance Bond is in effect.

*Forfeiture of the Bond.* This Appearance Bond may be forfeited if the defendant fails to comply with any of the conditions set forth above and on the reverse. The defendant and any surety who has signed this form also agree that the court may immediately order the amount of the bond surrendered to the United States, including any security for the bond, if the defendant fails to comply with the above agreement. The court may also order a judgment of forfeiture against the defendant and against each surety for the entire amount of the bond, including any interest and costs.

Date

Xiu Chan Huang (ph) , Surety Address: 660 Seaview Ave, Staten Island NY — 10/13/22

Xiu Chen Huang

You Qing Chan (ph) , Surety Address: 1515 74th St, Brooklyn, NY — 10/13/22

Chen Yan Qing

_____ , Surety Address:_____

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release and of the penalties and sanctions set forth on the front and reverse sides of this form.

X Yanbing Chen

Signature of Defendant

Release of the Defendant is hereby ordered on Oct 13 , 20 22

_____ , US MJ

Distribution: Canary - Court    Pink - Pretrial Services    Goldenrod -Defendant

## STANDARD CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate any federal, state or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

(3) The defendant must advise the Court, the Pretrial Services office, defense Counsel and the U.S. Attorney in writing before making any change in address or telephone number.

(4) The defendant must appear in court as required and must surrender for service of any sentence imposed as directed.

(5) The defendant must refrain from use or unlawful possession of a narcotic drug or other controlled substances as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

(6) If the defendant fails to report as required to the Pretrial Services Agency, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.

(7) The defendant must not possess a firearm, destructive device, or other weapon.

## SPECIAL CONDITIONS OF RELEASE FOR TESTING, TREATMENT OR EVALUATION AND FOR LOCATION MONITORING

1. If the defendant fails to appear for any specified treatment or evaluation, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.

2. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing, as determined by Pretrial Services.

3. If defendant is subject to a location restriction program or location monitoring, defendant must:
   (a) stay at his/her residence at all times except for approved activities and may not leave for approved activities without providing prior notice to Pretrial Services, except in cases of medical emergencies.
   (b) abide by all program requirements and instructions provided by Pretrial Services relating to the operation of monitoring technology. Unless specifically ordered by the court, Pretrial Services may require use of one of the following or comparable monitoring technology: Radio Frequency (RF) monitoring; Passive Global Positioning Satellite (GPS) monitoring; Active Global Positioning Satellite (GPS) monitoring (including "hybrid" (Active/Passive) GPS); Voice Recognition monitoring.

## FORFEITURE OF THE BOND

This appearance bond may be forfeited if the defendant does not comply with the conditions of release set forth in this Order Setting Conditions of Release and Bond. The court may immediately order the amount of the bond and any Collateral surrendered to the United States if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

## RELEASE OF THE BOND

This appearance bond may be terminated at any time by the Court. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## ADVICE OF PENALTIES AND SANCTIONS TO THE DEFENDANT

Defendant is advised that violating any of the foregoing conditions of release may result in the immediate issuance of a warrant of arrest, a revocation of the order of release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if defendant commits a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence defendant may receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, defendant knowingly fails to appear as the conditions of release require, or to surrender to serve a sentence, defendant may be prosecuted for failing to appear or surrender and additional punishment may be imposed, whether or not the defendant is convicted of the pending charges. If defendant is convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – defendant will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – defendant will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – defendant will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – defendant will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence imposed. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

CJA-23
(Rev 3/21)

# FINANCIAL AFFIDAVIT

IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE

IN THE UNITED STATES ☐ DISTRICT COURT ☐ COURT OF APPEALS ☐ OTHER *(Specify Below)*

IN THE CASE OF

| United States | v. | Chen | FOR | | LOCATION NUMBER |
|---|---|---|---|---|---|
| | | | AT | | |

PERSON REPRESENTED *(Show your full name)*

YANBING CHEN

1 ☑ Defendant - Adult
2 ☐ Defendant - Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Supervised Release Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other *(Specify)* _____

| DOCKET NUMBERS |
|---|
| Magistrate Judge |
| District Court |
| Court of Appeals |

CHARGE/OFFENSE *(Describe if applicable & check box→)* ☑ Felony ☐ Misdemeanor

18 U.S.C. § 1349

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

| INCOME & ASSETS | EMPLOYMENT | Do you have a job? ☑ Yes ☐ No | | |
|---|---|---|---|---|
| | | IF YES, how much do you earn per month? 833 | | |
| | | Will you still have a job after this arrest? ☑ Yes ☐ No ☐ Unknown | | |

| | | Do you own any of the following, and if so, what is it worth? | | |
|---|---|---|---|---|
| INCOME & ASSETS | PROPERTY | | APPROXIMATE VALUE | DESCRIPTION & AMOUNT OWED |
| | | Home | $ | |
| | | Car/Truck/Vehicle | $ 20,000 | 2015 MERCEDES BENZ |
| | | Boat | $ | |
| | | Stocks/bonds | $ | |
| | | Other property | $ | |

| | CASH & BANK ACCOUNTS | Do you have any cash, or money in savings or checking accounts? ☐ Yes ☑ No |
|---|---|---|
| | | IF YES, give the total approximate amount after monthly expenses $ _____ |

How many people do you financially support? 0

| OBLIGATIONS, EXPENSES, & DEBTS | BILLS & DEBTS | MONTHLY EXPENSE | TOTAL DEBT |
|---|---|---|---|
| | Housing | $ 1,000 | $ |
| | Groceries | $ | $ |
| | Medical expenses | $ | $ |
| | Utilities | $ | $ |
| | Credit cards | $ | $ |
| | Car/Truck/Vehicle | $ | $ |
| | Childcare | $ | $ |
| | Child support | $ | $ |
| | Insurance | $ | $ |
| | Loans | $ | $ |
| | Fines | $ | $ |
| | Other | $ 1,200 | $ |

I certify under penalty of perjury that the foregoing is true and correct.

10/13/2022

_____
SIGNATURE OF DEFENDANT
(OR PERSON SEEKING REPRESENTATION)

Date

AO 466A (Rev. 12/17) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York ☑

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. |
| Yanbing Chen ) | |
| *Defendant* ) | Charging District's Case No. |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)* **District of Massachusetts**

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)     a hearing on any motion by the government for detention;

(6)     request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☐     an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district. I request that my
☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: 10/13/22

x yanbing chen
*Defendant's signature*

*Signature of defendant's attorney*

Kannan Sundaram
*Printed name of defendant's attorney*

**United States District Court, Eastern District of New York**

UNITED STATES OF AMERICA          **ORDER SETTING CONDITIONS OF RELEASE**
        V.                                         **AND APPEARANCE BOND**

_Rong Li_ _____, Defendant.    Case Number: _22 - 1106 M_

### RELEASE ORDER

It is hereby ORDERED that the above-named defendant be released subject to the Standard Conditions of Release on the reverse and as follows:
[ ]   Upon **Personal Recognizance Bond** on his/her promise to appear at all scheduled proceedings as required, or
[✓]   Upon **Bond** executed by the defendant in the amount of $_____, and   $ 100,000
     secured by [✓] financially responsible sureties listed below and/or [ ] collateral set forth below.

### Additional Conditions of Release

The Court finding that release under the Standard Conditions of Release on the reverse will not by themselves reasonably assure the appearance of the defendant and/or the safety of other persons and the community, IT IS FURTHER ORDERED as follows:
[✓] 1.   The defendant must remain in and may not leave the following areas without Court permission: [✓] New York City; [✓] Long Island, NY; [ ] New York State; [ ] New Jersey; [✓] _MA for court_ and travel to and from this Court and the permitted areas.
[✓] 2.   The defendant must avoid all contact with the following persons or entities: _co dfts except in the presence of counsel_.
[ ] 3.   The defendant must avoid and not go to any of the following locations: _____.
[✓] 4.   The defendant must surrender all passports to Pretrial Services by _____ and not obtain other passports or international travel documents.
[✓] 5.   The defendant is placed under the supervision of the Pretrial Services Agency subject to the Special Conditions on the reverse and:
    [✓] a.   is subject to random visits by a Pretrial Services officer at defendant's residence and/or place of work;
    [✓] b.   must report [✓] as directed by Pretrial Services or [ ] in person ___ times per _____ and/or [ ] by telephone ___ times per _____.
    [ ] c.   must undergo [ ] testing, [ ] evaluation and/or [ ] treatment for substance abuse, including alcoholism, as directed by Pretrial Services.
    [ ] d.   must undergo evaluation and treatment for mental health problems, as directed by Pretrial Services.
    [✓] e.   is subject to the following location restriction program with location monitoring, as directed by Pretrial Services:
       [ ] home incarceration: restricted to home at all times, except for attorney visits, court appearances and necessary medical treatment;
       [ ] home detention: restricted to home at all times, except for attorney visits, court appearances, medical treatment, [ ] religious services,
         [ ] employment, [ ] school or training, [ ]other activities approved by Pretrial Services, [ ] _____
    [✓]   curfew: restricted to home every day from _____ to _____, or [✓] as directed by Pretrial Services.
    [ ]   Defendant must pay all or part of the cost of any required testing, evaluation, treatment and/or location monitoring with personal funds, based upon ability to pay as determined by the Court and the Pretrial Services Agency, and/ or from available insurance.

[ ] 6.   Other Conditions: _____

### APPEARANCE BOND

I, the undersigned defendant, and each surety who signs this bond, acknowledge that I have read this Appearance Bond and, and have either read all the other conditions of release or have had those conditions explained. I further acknowledge that I and my personal representatives, jointly and severally, are bound to pay the United States of America the sum of $_100,000_ and that this obligation is secured with the below interest in the following property ("Collateral") which I represent is/are free and clear of liens except as otherwise indicated:

[ ] cash deposited in the Registry of the Court in the sum of $_____;
[ ] premises located at:_____ owned by_____.
[ ] I also agree to execute a confession of judgment, mortgage or lien in form approved by the U.S. Attorney which shall be duly filed with the proper local and state authorities on or before _____.

Each owner of the above Collateral agrees not to sell the property, allow further claims or encumbrances to be made against it, or do anything to reduce its value while this Appearance Bond is in effect.

_Forfeiture of the Bond._ This Appearance Bond may be forfeited if the defendant fails to comply with any of the conditions set forth above and on the reverse. The defendant and any surety who has signed this form also agree that the court may immediately order the amount of the bond surrendered to the United States, including any security for the bond, if the defendant fails to comply with the above agreement. The court may also order a judgment of forfeiture against the defendant and against each surety for the entire amount of the bond, including any interest and costs.

                                                                                           _Date_

_Sandy Li-by M J Ku_ _____, Address: 21 Linda Ave Staten Island, NY 10305   10/13/22
_Sandy Li_ , Surety
_Alice Huang_ _____ Address: 74 Bell St. Staten Island, NY 10305   10/13/22
_Alice Huang (by M J Ku)_ , Surety
_____ Address: _____
, Surety

    I acknowledge that I am the defendant in this case and that I am aware of the conditions of release and of the penalties and sanctions set forth on the front and reverse sides of this form.

                                                                             Signature of Defendant

__The Defendant is hereby ordered on__ _Oct 13_ 20_22_ _____

_____, US_ J

                        Distribution:    Canary - Court     Pink - Pretrial Services     Goldenrod -Defendant

## STANDARD CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate any federal, state or local law while on release.
(2) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.
(3) The defendant must advise the Court, the Pretrial Services office, defense Counsel and the U.S. Attorney in writing before making any change in address or telephone number.
(4) The defendant must appear in court as required and must surrender for service of any sentence imposed as directed.
(5) The defendant must refrain from use or unlawful possession of a narcotic drug or other controlled substances as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.
(6) If the defendant fails to report as required to the Pretrial Services Agency, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.
(7) The defendant must not possess a firearm, destructive device, or other weapon.

## SPECIAL CONDITIONS OF RELEASE FOR TESTING, TREATMENT OR EVALUATION AND FOR LOCATION MONITORING

1. If the defendant fails to appear for any specified treatment or evaluation, defendant may be subject to such random visits at his/her residence or work by a Pretrial Services Officer as may be necessary to verify his/her residence or place of employment in order to secure compliance with the order of release.
2. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing, as determined by Pretrial Services.
3. If defendant is subject to a location restriction program or location monitoring, defendant must:
   (a) stay at his/her residence at all times except for approved activities and may not leave for approved activities without providing prior notice to Pretrial Services, except in cases of medical emergencies.
   (b) abide by all program requirements and instructions provided by Pretrial Services relating to the operation of monitoring technology. Unless specifically ordered by the court, Pretrial Services may require use of one of the following or comparable monitoring technology: Radio Frequency (RF) monitoring; Passive Global Positioning Satellite (GPS) monitoring; Active Global Positioning Satellite (GPS) monitoring (including "hybrid" (Active/Passive) GPS); Voice Recognition monitoring.

## FORFEITURE OF THE BOND

This appearance bond may be forfeited if the defendant does not comply with the conditions of release set forth in this Order Setting Conditions of Release and Bond. The court may immediately order the amount of the bond and any Collateral surrendered to the United States if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

## RELEASE OF THE BOND

This appearance bond may be terminated at any time by the Court. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## ADVICE OF PENALTIES AND SANCTIONS TO THE DEFENDANT

Defendant is advised that violating any of the foregoing conditions of release may result in the immediate issuance of a warrant of arrest, a revocation of the order of release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if defendant commits a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence defendant may receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, defendant knowingly fails to appear as the conditions of release require, or to surrender to serve a sentence, defendant may be prosecuted for failing to appear or surrender and additional punishment may be imposed, whether or not the defendant is convicted of the pending charges. If defendant is convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – defendant will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – defendant will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – defendant will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – defendant will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence imposed. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

(Rev 3/21)

# FINANCIAL AFFIDAVIT
IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE

IN THE UNITED STATES ☒ DISTRICT COURT ☐ COURT OF APPEALS ☐ OTHER *(Specify Below)*

FOR

AT

LOCATION NUMBER

IN THE CASE OF

United States of America V. Rongjian Li

PERSON REPRESENTED *(Show your full name)*

Rongjian Li

1 ☒ Defendant - Adult
2 ☐ Defendant - Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Supervised Release Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other *(Specify)* _____

DOCKET NUMBERS
Magistrate Judge
KUO
District Court
EDNY
Court of Appeals

CHARGE/OFFENSE *(Describe if applicable & check box→)* ☒ Felony ☐ Misdemeanor

Title 18 USC 1956 (h)
Title 21 USC 846

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

| | | | | |
|---|---|---|---|---|
| **INCOME & ASSETS** | **EMPLOYMENT** | Do you have a job? ☐ Yes ☒ No | | |
| | | IF YES, how much do you earn per month? _____ | | |
| | | Will you still have a job after this arrest? ☐ Yes ☐ No ☐ Unknown | | |

**INCOME & ASSETS**

**PROPERTY**

Do you own any of the following, and if so, what is it worth?

| | APPROXIMATE VALUE | DESCRIPTION & AMOUNT OWED |
|---|---|---|
| Home | $ 600,000 | $480,000 owed |
| Car/Truck/Vehicle | $ 60,000 | Lease- Audi Q8 2019 |
| Boat | $ — | — |
| Stocks/bonds | $ 10,000 | |
| Other property | $ 500,000 | Property in WA- $360,000 owed |

**CASH & BANK ACCOUNTS**

Do you have any cash, or money in savings or checking accounts? ☒ Yes ☐ No

IF YES, give the total approximate amount after monthly expenses $ 50,000

**OBLIGATIONS, EXPENSES, & DEBTS**

How many people do you financially support? 2

| BILLS & DEBTS | MONTHLY EXPENSE | TOTAL DEBT |
|---|---|---|
| Housing | $ ① 2,400 ② 2,100 | $ 840,000 mortgage total |
| Groceries | $ 300 | $ - |
| Medical expenses | $ - | $ - |
| Utilities | $ - | $ - |
| Credit cards | $ 100 | $ 4,000 |
| Car/Truck/Vehicle | $ 1,300 | $ |
| Childcare | $ - | $ |
| Child support | $ - | $ - |
| Insurance | $ 119 | $ - |
| Loans | $ - | $ |
| Fines | $ - | $ - |
| Other  cell | $ 200 | $ |

I certify under penalty of perjury that the foregoing is true and correct.

* completed telephonically (KO)

SIGNATURE OF DEFENDANT
(OR PERSON SEEKING REPRESENTATION)

10/13/22
Date

CJA 20 APPOINTMENT OF AND AUTHORITY TO PAY COURT-APPOINTED COUNSEL (Rev. 07/17)

| 1. CIR./DIST./ DIV. CODE EDNY | 2. PERSON REPRESENTED Rongjian Li | | VOUCHER NUMBER |
|---|---|---|---|

| 3. MAG. DKT./DEF. NUMBER 22 MJ 1106 | 4. DIST. DKT./DEF. NUMBER | 5. APPEALS DKT./DEF. NUMBER | 6. OTHER DKT. NUMBER |
|---|---|---|---|

| 7. IN CASE/MATTER OF (Case Name) USA v. Li et al | 8. PAYMENT CATEGORY ☑ Felony ☐ Petty Offense ☐ Misdemeanor ☐ Other ☐ Appeal | 9. TYPE PERSON REPRESENTED ☑ Adult Defendant ☐ Appellant ☐ Juvenile Defendant ☐ Appellee ☐ Other | 10. REPRESENTATION TYPE (See Instructions) CC |
|---|---|---|---|

11. OFFENSE(S) CHARGED (Cite U.S. Code, Title & Section) *If more than one offense, list (up to five) major offenses charged, according to severity of offense.*

18 USC 1956

| 12. ATTORNEY'S NAME (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS | 13. COURT ORDER |
|---|---|

Jeffrey Pittell
299 E. Shore Road
Suite 302
Great Neck, NY 11023

Telephone Number : (516) 829-2299

14. NAME AND MAILING ADDRESS OF LAW FIRM *(Only provide per instructions)*

☑ O Appointing Counsel ☐ C Co-Counsel
☐ F Subs For Federal Defender ☐ R Subs For Retained Attorney
☐ P Subs For Panel Attorney ☐ Y Standby Counsel

Prior Attorney's
Appointment Dates:

☑ Because the above-named person represented has testified under oath or has otherwise satisfied this Court that he or she (1) is financially unable to employ counsel and (2) does not wish to waive counsel, and because the interests of justice so require, the attorney whose name appears in Item 12 is appointed to represent this person in this case, OR

☐ Other (See Instructions)

*Peggy Kuo*

Signature of Presiding Judge or By Order of the Court

10/13/2022 | 10/13/2022
Date of Order | Nunc Pro Tunc Date

Repayment or partial repayment ordered from the person represented for this service at time appointment. ☐ YES ☐ NO

| | CLAIM FOR SERVICES AND EXPENSES | | | FOR COURT USE ONLY | | |
|---|---|---|---|---|---|---|
| | CATEGORIES (Attach itemization of services with dates) | HOURS CLAIMED | TOTAL AMOUNT CLAIMED | MATH/TECH. ADJUSTED HOURS | MATH/TECH. ADJUSTED AMOUNT | ADDITIONAL REVIEW |
| 15. | a. Arraignment and/or Plea | | 0.00 | | 0.00 | |
| | b. Bail and Detention Hearings | | 0.00 | | 0.00 | |
| | c. Motion Hearings | | 0.00 | | 0.00 | |
| In Court | d. Trial | | 0.00 | | 0.00 | |
| | e. Sentencing Hearings | | 0.00 | | 0.00 | |
| | f. Revocation Hearings | | 0.00 | | 0.00 | |
| | g. Appeals Court | | 0.00 | | 0.00 | |
| | h. Other (Specify on additional sheets) | | 0.00 | | 0.00 | |
| | (RATE PER HOUR = $           )     TOTALS: | 0.00 | 0.00 | 0.00 | 0.00 | |
| 16. | a. Interviews and Conferences | | 0.00 | | 0.00 | |
| | b. Obtaining and reviewing records | | 0.00 | | 0.00 | |
| Out of Court | c. Legal research and brief writing | | 0.00 | | 0.00 | |
| | d. Travel time | | 0.00 | | 0.00 | |
| | e. Investigative and other work (Specify on additional sheets) | | 0.00 | | 0.00 | |
| | (RATE PER HOUR = $           )     TOTALS: | 0.00 | 0.00 | 0.00 | 0.00 | |
| 17. | Travel Expenses (lodging, parking, meals, mileage, etc.) | | | | | |
| 18. | Other Expenses (other than expert, transcripts, etc.) | | | | | |
| | **GRAND TOTALS (CLAIMED AND ADJUSTED):** | | 0.00 | | 0.00 | |

| 19. CERTIFICATION OF ATTORNEY/PAYEE FOR THE PERIOD OF SERVICE | 20. APPOINTMENT TERMINATION DATE IF OTHER THAN CASE COMPLETION | 21. CASE DISPOSITION |
|---|---|---|
| FROM:                TO: | | |

22. CLAIM STATUS ☐ Final Payment ☐ Interim Payment Number _____ ☐ Supplemental Payment

Have you previously applied to the court for compensation and/or reimbursement for this case? ☐ YES ☐ NO     If yes, were you paid? ☐ YES ☐ NO
Other than from the Court, have you, or to your knowledge has anyone else, received payment (compensation or anything of value) from any other source in connection with this representation? ☐ YES ☐ NO If yes, give details on additional sheets.
**I swear or affirm the truth or correctness of the above statements.**

Signature of Attorney                                                    Date

| APPROVED FOR PAYMENT — COURT USE ONLY | | | | |
|---|---|---|---|---|
| 23. IN COURT COMP. | 24. OUT OF COURT COMP. | 25. TRAVEL EXPENSES | 26. OTHER EXPENSES | 27. TOTAL AMT. APPR./CERT. $0.00 |
| 28. SIGNATURE OF THE PRESIDING JUDGE | | | DATE | 28a. JUDGE CODE |
| 29. IN COURT COMP. | 30. OUT OF COURT COMP. | 31. TRAVEL EXPENSES | 32. OTHER EXPENSES | 33. TOTAL AMT. APPROVED $0.00 |
| 34. SIGNATURE OF CHIEF JUDGE, COURT OF APPEALS (OR DELEGATE) *Payment approved in excess of the statutory threshold amount.* | | | DATE | 34a. JUDGE CODE |

AO 466A (Rev. 12/17) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York ▾

United States of America
    v.

**Rong Li**

_____
*Defendant*

)
)
)
)
)
)

Case No. **22 – 1106M**

Charging District's Case No. _____

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)* **MA** _____.

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)    a hearing on any motion by the government for detention;

(6)    request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑    an identity hearing and production of the warrant.

☐    a preliminary hearing.

☐    a detention hearing.

☐    an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district. I request that my
    ☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: **10/13/22**

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**Jeffrey Pittell**
*Printed name of defendant's attorney*

AO 94 (Rev. 8/97) Commitment to Another District

# UNITED STATES DISTRICT COURT

**EASTERN**      District of      **NEW YORK**

| UNITED STATES OF AMERICA | **COMMITMENT TO ANOTHER** |
|---|---|
| V. | **DISTRICT** |

Jin Hua Zhang

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense | District of Arrest | District of Offense |
| | | 22 – 1106 M | |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**
☐ Indictment    ☐ Information    ☑ Complaint    ☐ Other (specify)

charging a violation of    18   U.S.C. §   1956

**DISTRICT OF OFFENSE**    District of Massachusetts

**DESCRIPTION OF CHARGES:**

Conspiracy to commit money laundering

**CURRENT BOND STATUS:**
☐ Bail fixed at        and conditions were not met
☐ Government moved for detention and defendant detained after hearing in District of Arrest
☐ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

| **Representation:** | ☑ Retained Own Counsel | ☐ Federal Defender Organization | ☐ CJA Attorney | ☐ None |
|---|---|---|---|---|

| **Interpreter Required?** | ☐ No | ☑ Yes | Language: | Mandarin |
|---|---|---|---|---|

**DISTRICT OF** NEW YORK

TO: THE UNITED STATES MARSHAL
     You are hereby commanded to take custody of the above named defendant and to transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above and there deliver the defendant to the United States Marshal for that District or to some other officer authorized to receive the defendant.

10/13/22
Date                        United States Judge or Magistrate Judge

**RETURN**

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |

| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
|---|---|---|
| | | |

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| United States of America | ) | |
| Plaintiff | ) | Case No. 22 CR 458 |
| v. | ) | |
| Jin Hua Zhang | ) | |
| Defendant | ) | |

## APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Jin Hua Zhang ,     A MANDARIN INTERPRETER IS REQUIRED FOR ALL PROCEEDINGS.

Date:     10/13/2022

_____
Attorney's signature

Kevin E. Morgan 4061701
Printed name and bar number

136-18 39th Avenue
8th Floor
Flushing, New York 11354

Address

kevinmorgan@dcklawfirm.com
E-mail address

(929) 292-8266
Telephone number

(212) 810-7257
FAX number

AO 466A (Rev. 12/17)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the

Eastern District of New York ▾

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 22-1106M |
| | ) | |
| Jin Hua Zhang | ) | Charging District's Case No. |
| Defendant | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*  Massachusetts .

I have been informed of the charges and of my rights to:

(1)  retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)  an identity hearing to determine whether I am the person named in the charges;

(3)  production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)  a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)  a hearing on any motion by the government for detention;

(6)  request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑  an identity hearing and production of the warrant.

☑  a preliminary hearing.

☑  a detention hearing.

☑  an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district.  I request that my
☑ preliminary hearing and/or ☑ detention hearing be held in the prosecuting district, at a time set by that court.

    I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:  10/14/22

_____
Zhang Jin Hua
*Defendant's signature*

_____
K. E. M.
*Signature of defendant's attorney*

_____
Kevin E. Morgan
*Printed name of defendant's attorney*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | 22-MJ-1106 |
| YANBING CHEN<br>RONGJIAN LI<br>JIN HUA ZHANG, | ORDER |
| Defendant(s). | |

PEGGY KUO, United States Magistrate Judge:

This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), to confirm the Government's disclosure obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations.

The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government. *Id.* at 87. This obligation applies regardless of whether the defendant requests this information or whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.

As part of these obligations, the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. Such information must be disclosed sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order.[1]

---

[1] This Order does not purport to set forth an exhaustive list of the Government's disclosure obligations.

The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future. These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.

In the event the Government believes that a disclosure under this Order would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of its obligations, which may include in camera review or withholding or subjecting to a protective order all or part of the information otherwise subject to disclosure.[2]

For purposes of this Order, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.

If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:

(1) specify the terms and conditions of such production;

(2) grant a continuance;

(3) impose evidentiary sanctions;

(4) impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities;

(5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or

(6) enter any other order that is just under the circumstances.

---

[2] The Classified Information Procedures Act sets forth separate procedures to be followed in the event that the Government believes matters relating to classified information may arise in connection with the prosecution. *See* 18 U.S.C. app. 3 §§ 1 *et seq.*

SO ORDERED.

Dated: OCTOBER 13, 2022
      BROOKLYN, NEW YORK

_Peggy Kuo_
United States Magistrate Judge